IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **CURTIS KLAASSEN, Ph.D.,**<br><br>Plaintiff<br><br>v.<br><br>**UNIVERSITY OF KANSAS SCHOOL OF MEDICINE, UNIVERSITY OF KANSAS, KANSAS UNIVERSITY MEDICAL CENTER, BARBARA ATKINSON, DOUGLAS GIROD, GERALD CARLSON, PAUL TERRANOVA, BRUNO HAGENBUCH, GREGORY KOPF, STEVEN STITES, HARTMUT JAESCHKE, CODY TULLY, ROBERT KLEIN, AND ALLEN RAWITCH,**<br><br>Defendants. | Case No.: 13-CV-2561 |

**MOTION FOR RECONSIDERATION AND CLARIFICATION**

Dr. Curtis Klaassen served as a tenured professor for the University of Kansas ("KUMC") for over 45 years. For the first 43 years of Dr. Klaassen's tenure, not a single complaint was lodged against him. However, after he started criticizing the administration's handling of National Institute of Health (NIH) grant monies and its decision to build a Cancer Center, KUMC and its administration began retaliating against him in violation of his constitutional rights. Dr. Klaassen filed his first Amended Complaint, the first Petition to set forth all of his causes of action, on April 28, 2014. (Doc. 66.) Defendants moved for Judgment on the Pleadings, which this Court, on February 3, 2015, granted in part and denied in part ("February Order"). (Doc. 102.) The Court's February Order was over 50 pages and addressed at least a dozen complex and highly contested constitutional and state law issues. Dr. Klaassen respectfully submits that the Court misapprehended Dr. Klaassen's critical legal contentions in

- 1 -

arriving at *one* part of its decision. While motions for reconsideration are not favored by the courts, Dr. Klaassen respectfully asks this Court to take another look at one particular ruling in this matter.

## FACTUAL OVERVIEW

This Court is aware of the underlying facts of this lawsuit; the facts were stated in this Court's February Order. The facts will not be restated here.

## ANALYSIS AND ARGUMENT

### I. APPLICABLE STANDARDS

Motions to reconsider are governed by Federal Rules of Civil Procedure Rule 59(e). As stated by this Court:

> Federal Rule of Civil Procedure 59(e) allows a party to file a motion to amend or alter a previous judgment within [28] days after the entry of that judgment, but is only proper in a limited number of situations, including "(1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." *Renfro v. Spartan Computer Servs., Inc.*, 2008 WL 1924946 at *1 (D.Kan.2008).

*Hutton v. Deutsche Bank AG,* No. 07-2041-JTM, 2009 WL 635121, at *1 (D. Kan. Mar. 10, 2009). A motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *Id.* at *4. Dr. Klaassen brings this motion to correct clear error or prevent manifest injustice because the Court misapprehended important facts regarding's Dr. Klaassen's property interest pleaded in Count 2 of his Second Amended Complaint.

## II. COUNT 2: DUE PROCESS—DR. KLAASSEN POSSESSED A PROPERTY INTEREST IN THE RIGHT TO CONDUCT RESEARCH.

### A. This Court erred in concluding that Dr. Klaassen lacked a property interest in the right to conduct research because he affirmatively evidenced that it was KUMC's policy and practice not to normally strip faculty members of their status as principal investigators.

In its February Order, this Court concludes that Dr. Klaassen's property interest in his tenure right to conduct research failed because it was based on a contract implied in fact theory that rested solely on KUMC's Handbook, "which by its terms, is not a contract." (Doc. 102, p. 37.) The court misconstrues Dr. Klaassen's property interest.

Dr. Klaassen pleaded a property interest in a tenure right to conduct unfettered research. (Doc. 106. ¶ 24.). He pleaded that the property right was established by both KUMC's adoption of the American Association of University Professor's *1940 Statement of Academic Freedom and Tenure* (*1940 Statement*) and KUMC's custom and practice created over the course of Dr. Klaassen's 40-year career.  In particular, Dr. Klaassen stated that "pursuant to his tenure rights to conduct unimpeded and unfettered research, [he] applied for and received, as a principal investigator, an average of three NIH grants per year over the course of his career." (Doc. 106, ¶ 25.)  Admittedly, Dr. Klaassen did not plead what he argued in his Opposition to the Defendants' Motion for Judgment on the Pleadings: that KUMC has never sought to strip a professor of his status as principal investigator or otherwise denied a professor his right to full freedom in his research.  This Court concluded that Dr. Klaassen's technical shortcoming was fatal under *Twombly*. However, before this Court, submitted by the Defendants, was sworn testimony supporting both Dr. Klaassen's factual statements that KUMC has never sought to strip a professor of his status as principal investigator and his pleaded allegation that KUMC's course of conduct granted him a property interest in his tenure right to conduct research.

Dr. Klaassen testified at the May 29, 2012, *ad hoc* hearing:

- 3 -

> Q: Did you talk to Terranova, or how did you --
> A. Well, by the time I got back to my office, which was like five minutes to three -- we were going to have our meeting at 3:00. And at five minutes to three, I got an email from Terranova saying, oh, you might not want to have your meeting, I took all your grants away from you.
> Q: Had you ever been consulted about having your 4 grants taken or --
> A: No. Quite frankly, I didn't think it was legal, **and I had never heard about it before.**

(Doc. 81-6; 240:21:-241:6.)

Dr. Stites corroborated Dr. Klaassen's testimony and later confirmed that KUMC does not routinely take away NIH Grants at the November 13, 2013, hearing. He testified that it would be an "unusual occurrence" for a faculty member to be stripped of his status as PI on his NIH Grants. (Doc. 81-7; 169:25-170:9.).

Dr. Klaassen alleged a property interest in the right to conduct research established by KUMC's course of conduct and its adoption of the *1940 Statement*. This Court used one sentence out of the KUMC's Handbook to test the veracity of Dr. Klaassen's allegations that KUMC adopted policies that granted him a property interest in the right to conduct unfettered research. (Doc. 102, p. 36.) If this Court is going to consider evidence outside the pleadings to test the validity of the allegations contained within them, then this Court should consider all available evidence. Additional evidence, also before this Court, revealed that KUMC does not normally strip faculty members of their status as principal investigators.[1] What Dr. Klaassen did not expressly plead, he affirmatively evidenced—KUMC's course of conduct is not to strip faculty members of their status as principal investigator on NIH Grants.

This Court's February Order insinuates, if not outright states, that if Dr. Klaassen would have pleaded that it was KUMC's course of conduct not to remove principal investigators from NIH grants, then Dr. Klaassen's second count would be plausible under *Twombly*. (Doc. 102,

---

[1] The Court relied on the November 13, 2013, hearing transcript to *sua sponte* consider whether the hearing "posses[e]d enough characteristics of the judicial process." (Doc. 102, p. 39.)

- 4 -

36-37.) If so, then sworn testimony in support of Dr. Klaassen's allegation that it was KUMC's course of conduct not to remove principal investigators from NIH grants easily clears *Twombly's* plausibility pleading standards. *See Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012) (*Twombly* is not an evidentiary standard); *Whitney v. The Guys, Inc.*, 700 F.3d 1118, 1128-29 (8th Cir. 2012) (*Twombly's* plausibility standard does not require evidentiary proof); *Carroll v. Gradient Fin. Grp., LLC,* No. 12-CV-2477-JAR-JPO, 2014 WL 1094439, at *3 (D. Kan. Mar. 19, 2014) (granting plaintiff's motion to reconsider and providing plaintiff with leave to file a Third Amended Complaint because the court erred by confusing pleading standards with evidentiary standards).

    **B. This Court erred in concluding that Dr. Klaassen lacked a property interest in the right to conduct research because Dr. Klaassen's property interest is established by the KUMC's adoption of the *1940 Statement of Principles on Academic Freedom and Tenure*, not by the terms of KUMC's Handbook.**

This Court misconstrued Dr. Klaassen's property interest in his tenure rights. Dr. Klaassen's alleged property right is broader than any right not to be removed as principal investigator from NIH grants. Dr. Klaassen alleged a "tenure right" to *conduct research*; he did not claim an interest in the NIH grants. And Dr. Klaassen pleaded that this right was established by KUMC's **adoption of the *1940 Statement of Principles on Academic Freedom and Tenure* not by the terms of KUMC's Handbook.** (Doc. 106, ¶ 24.) While KUMC's handbook states multiple times that KU has adopted the *1940 Statement*, it is not the only place where the University has affirmed its adherence to principles of the statement. In fact, the University's adoption of the *1940 Statement* is not limited to the KUMC campus. See University of Kansas Faculty Senate Rules, 6.1.2 Academic Freedom and Tenure Policy, *available at* http://policy.ku.edu/governance/FSRR; *see also Meiners v. University of Kansas*, 239 F.Supp.2d 1175 (D.Kan. 2002) (noting the University's tenure regulations "which the Board of Regents had

- 5 -

approved in 1947, [were] based on the 1940 Statement of the American Association of University Professors"). The *1940 Statement* is the country's most widely accepted description of the basic attributes of academic freedom and tenure, and has been cited with approval by the United States Supreme Court. *See Tilton v. Richardson*, 403 U.S. 672, 681-82 (1971).

Dr. Klaassen pleaded that KUMC adopted a practice by which it would not interfere with the right of its faculty to research and obtain NIH grants. (Doc. 106, ¶¶ 24-25.) Dr. Klaassen alleged a property interest in that tenured right to conduct research. (Doc. 106, ¶ 25.) Dr. Klaassen also alleged facts that KUMC took that right away when it stripped him of his status as PI on NIH grants, thereby taking away approximately $13 million dollars in NIH monies. (Doc. 106, ¶¶ 31, 32, 57-61, 66, 121-128) He alleged that by taking the NIH grants, KUMC interfered with his property right to conduct research. (Doc. 106, ¶¶ 121-128.) And he alleged that the grants were taken without any due process. (Doc.106, ¶¶ 57, 121-128.) No other facts are necessary to plead a plausible due process claim.

In addition, KUMC's Handbook, standing alone, provides sufficient grounds to establish a property interest. Dr. Klaassen pleaded it was a contract in Count 14. The Handbook states it is a "policy manual" and that "all appointments to the faculty and unclassified staff are governed by these policies and procedures." (Doc. 91-1, p. 2.)  Handbook § III is identified as the Personnel Appointment Policies and Procedures section. (Doc. 91-1, p. 3.) Contained within § III, KUMC repeatedly confirms its adoption of *1940 Statement*. (Doc. 91-1, pp. 44, 74, 88.). And while the Handbook itself may not be an express contract of employment between KUMC and Dr. Klaassen, it governs the terms of the faculty appointments. (Doc. 91-1, pp. 33-34 (selection of faculty must be done pursuant to Handbook provisions), p. 34 (identifying the length of the terms of faculty appointments); § IV, pp. 138-149 (additional terms of faculty

appointments); App. A, pp. 255-258 (summary guidelines for faculty appointments)).  Therefore, it is plausible under *Twombly*, that the KUMC Handbook, standing alone, is, at a minimum, sufficient to establish Dr. Klaassen's property interest in freedom of research. *See Sweet v. Stormont Vail Regional Medical Center*, 647 P.2d 1274, 231 Kan. 604, 611 (Kan. 1982) (employer's policies in employee handbook became part of the underlying employment contract for a food service worker); *Holmes v. Unified School Dist. No. 259*, 46 P.3d 1158, 273 Kan. 864, 868 (Kan. 2002) (employer's policies became part of the underlying employment contract for a security employee).

**C. This Court erred in concluding that Dr. Klaassen lacked a property interest in the right to conduct research because Dr. Klaassen's unique tenure right to continued employment included a protectable property interest in the right to conduct research.**

Dr. Klaassen's case illustrates facts, recognized by the United States Supreme Court, that tenure is more than the right to receive a paycheck. "Academic tenure, if it is to have any meaning at all, must encompass the right to pursue scholarship wherever it may lead, the freedom to inquire, to study and to evaluate without the deadening limits of orthodoxy or the corrosive atmosphere of suspicion and distrust warned against in *Sweezy v. State of New Hampshire*, 354 U.S. 234, 250, 77 S. Ct. 1203, 1211, 1 L.Ed.2d 1311 (1957)." *Levin v. Harleston*, 770 F.Supp. 895, 925 (S.D.N.Y. 1991) *aff'd in part, vacated in part* 966 F.2d 85 (2d Cir. 1992).  This academic right, is more than a right to continued employment, it includes the right to conduct research.

In *Levin*, the court found that impeding the right to research, specifically the professors right to "seek [] outside grants" interferes with the professors' academic freedom and property interests under the Fourteenth Amendment. *Id.* at 925. And in *Hamid v. John Jay Coll. of Criminal Justice*, No. 99 CIV 8669 WK, 2000 WL 666344, at *6 (S.D.N.Y. May 19, 2000), the

court specifically held that a faculty member has a property interest in a "tenure right" to conduct research holding that the right to conduct research "constitutes a substantive rule of entitlement" because an "academic's access to research funds often bestows crucial non-pecuniary rights." *Id.* at *6. Dr. Klaassen cited *Hamid* earlier in his opposition; it is not mentioned in the Court's opinion. Dr. Klaassen possesses a viable property interest in his tenure right to conduct research. Tenure is more than then right to show up to work; it is the right to pursue scholarship and research without arbitrary interference. *See Crozier v. Howard*, 11 F.3d 967, 971(10th Cir. 1993) ("The primary function served by the grant of tenure is the preservation of academic freedom effected through the provision of job security."); *see also See Keyishian v. Board of Regents*, 385 U.S. 589, 603, (1967) ("Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us, and not merely to the teachers concerned."). KUMC violated that right when it stripped Dr. Klaassen's status as principal investigator of NIH grants. KUMC violated Dr. Klaassen's property right to pursue unfettered research.

> **D. Dr. Klaassen asks this Court to either reconsider its prior ruling or grant him leave to file an amended complaint.**

Dr. Klaassen respectfully asks this Court for the following: (1) revive Count 2 and allow him to proceed and prove through discovery that his tenure right in research is a protectable property interest or, in the alternative, (2) grant him permission to amend his complaint and plead Count 2 as a traditional contract implied in fact claim. A copy of the Third Amendment Complaint is attached as Exhibit A.

While this would be Dr. Klaassen's Third Amended Complaint, it is still early in the litigation process and the amendment would not be futile based on this Court's ruling. This Court's February Order is the first time Dr. Klaassen became aware of any possible defect in Count 2 relating to his property interest in unfettered research. Dr. Klaassen should be not be

punished for his counsel's failure to include a single sentence in his pleading. *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010) (stating "district courts may withhold leave to amend only for reasons such as 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment'"). This Court should grant Dr. Klaassen leave to amend. *See Childers v. Independent School Dist. No. 1 of Bryan County, State of Okl.*, 676 F.2d 1338 (10th Cir. 1982) (district court abused its discretion when it refused the plaintiff permission to amend complaint because "because the motion to dismiss was granted upon grounds that would have been eliminated by the proposed amendment"); *Ahmad v. Furlong*, 435 F.3d 1196 (10th Cir. 2006) ("A plaintiff should not be prevented from pursuing a claim simply because of a failure to set forth in the complaint a theory on which the plaintiff could recover, provided that a late shift in the thrust of the case will not prejudice the other party in maintaining its defense.").

### III.   DISMISSAL OF STATE LAW CLAIMS AGAINST STATE ENTITY DEFENDANTS

In its Order, this Court found that KUMC did not waive its sovereign immunity and dismissed Dr. Klaassen's state law claims against the state defendants without considering the merits of the claims. (Doc. 102, p. 19.) Dr. Klaassen does not request reconsideration of that ruling. However, the Court's order does not specify whether the dismissal is with prejudice or without. It should be without. *See Ballou v. University of Kansas Medical Center*, 871 F.Supp. 1384, 1386 (D. Kan. 1994); *Deelen v. Fairchild*, No. 05-2017, 2005 WL 3263885, at *8 (D. Kan. Dec. 1, 2005); *Wilkins v. Kansas Department of Labor*, No. 12-CV-01363, 2013 WL 591767, at *3 (D. Kan. Feb. 14, 2013). Dr. Klaassen respectfully asks this Court to clarify its order of dismissal.

## CONCLUSION

Dr. Klaassen respectfully requests this Court reconsider its ruling in Count 2 or grant him leave to amend his petition. In addition, he asks that this Court clarify that his state law claims against KUMC are dismissed without prejudice.

Respectfully submitted,

**s/ Alan Rupe**
Alan L. Rupe                              #08914
Jeremy K. Schrag                      #24164
KUTAK ROCK LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone: (316) 609-7900
Facsimile:  (316) 630-8021
alan.rupe@kutakrock.com
jeremy.schrag@kutakrock.com

## CERTIFICATE OF SERVICE

I hereby certify that I filed the above and foregoing Motion for Reconsideration and Clarification with CM/ECF on this 3rd day of March, 2015, which will send notification to the following:

Anthony F. Rupp, KS #11590
Tara S. Eberline, KS #22576
FOULSTON SIEFKIN LLP
32 Corporate Woods, Suite 600
Overland Park, KS 66210
(913) 498-2100
(913) 498-2101 (fax)
trupp@foulston.com
teberline@foulston.com

Sara L. Trower, KS #21514
Associate General Counsel
& Special Assistant Attorney General
Room 245 Strong Hall
1450 Jayhawk Blvd.
Lawrence, KS 66045
(785) 864-3276
(785) 864-4617 (fax)
strower@ku.edu

*Attorneys for Defendants*

s/ Alan L. Rupe
Alan L. Rupe