IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CURTIS KLAASSEN, Ph.D.,

        Plaintiff,

v.

UNIVERSITY OF KANSAS
SCHOOL OF MEDICINE, ET AL.,

        Defendants.

Case No. 13-CV-2561-DDC-KGS

**MEMORANDUM AND ORDER**

Plaintiff Dr. Curtis Klaassen, a longtime professor at the University of Kansas School of Medicine ("KUMC"), filed this lawsuit alleging that the school retaliated against him in violation of his constitutional rights. Defendants filed two Motions for Judgment on the Pleadings (Docs. 80, 82). On February 2, 2015, the Court granted defendants' motions in part and denied them in part (Doc. 102).

On March 3, 2015, plaintiff filed this Motion for Reconsideration and Clarification of the Court's Order (Doc. 108). First, plaintiff argues that the Court erred in dismissing Count 2 of his Second Amended Complaint. Count 2 alleges that defendants Terranova, Atkinson, Kopf, Carlson, Tully, Hagenbuch, Jaeschke, and Stites (the "Individual Defendants") violated plaintiff's procedural due process rights by stripping him of his status as principal investigator on several grants from the National Institutes of Health ("NIH"). Plaintiff asks the Court to revive Count 2 or grant him permission to file a Third Amended Complaint, which, he believes, corrects the deficiencies the Court identified in its Order. Second, plaintiff asks the Court to clarify one aspect of its Order. The Court concluded that the Eleventh Amendment barred plaintiff's state

1

law claims, Counts 9-14 of the Second Amended Complaint, and therefore dismissed them. Plaintiff asks the Court to specify whether it dismissed those claims with or without prejudice. For the following reasons, the Court denies plaintiff's motion to reconsider its decision to dismiss Count 2 but grants plaintiff leave to file his Third Amended Complaint. The Court clarifies that it dismissed Counts 9-14 in its February 2 Order *without* prejudice.

### I.   Legal Standard for Motions for Reconsideration

The decision whether to grant or deny a motion to reconsider is within the Court's sound discretion. *ScriptPro LLC v. Innovation Assocs., Inc.*, No. 06-2468-CM, 2012 WL 4887439, at *1 (D. Kan. Oct. 15, 2012). Three grounds may justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice. *Id.* (citing *Shinwari v. Raytheon Aircraft Co.*, 25 F. Supp. 2d 1206, 1208 (D. Kan. 1998)). However, "[r]evisiting issues previously addressed is not an appropriate basis for reconsideration, nor is advancing new arguments or presenting facts that were previously available." *Ning Lu v. Kendall*, No. 13-2080-KHV, 2013 WL 6484588, at *1 (D. Kan. Dec. 10, 2013).

### II.   The Court Denies Plaintiff's Request to Reconsider its Order Dismissing Count 2 of His Second Amended Complaint

Plaintiff first argues that the Court's decision to dismiss Count 2 of his Second Amended Complaint was clearly erroneous and therefore warrants reconsideration. The Court disagrees.

#### A.   Background

In Count 2, plaintiff alleges that the Individual Defendants violated 42 U.S.C. § 1983 and his procedural due process rights by asking the NIH to remove him from his position as principal investigator on four NIH grants. Plaintiff's duties as a tenured KUMC medical professor involved applying for and winning research grants. These grants funded both his research and

part of his salary.  Whenever plaintiff won a grant, he became the "principal investigator" for

that grant.  The principal investigator is responsible for the scientific and technical direction of a

project funded by a research grant.  Over the course of his 45-year career at KUMC, plaintiff

obtained approximately 75 grants from the NIH.  But while plaintiff was the person who applied

for the grants, the NIH awards grants to institutions, not individuals.  Thus, KUMC always was

the actual recipient of the NIH grants for which plaintiff applied.

Starting in 2010, plaintiff began to have a series of disputes with KUMC and various

KUMC officials.  In November 2011 and September 2013, defendants asked the NIH to remove

plaintiff from his position as the principal investigator on a total of four grants.  The NIH granted

each request and transferred the principal investigator status to other KUMC employees.

Plaintiff argues that this action—requesting that the NIH remove him as principal investigator—

infringed on a constitutionally protected property interest in the right to conduct research without

due process of law.

"Procedural due process imposes constraints on governmental decisions which deprive

individuals of liberty or property interests within the meaning of the Due Process Clause of the

. . . Fourteenth Amendment."  *Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) (quoting

*Mathews v. Eldridge*, 424 U.S. 319, 322 (1976)).  Courts assess procedural due process claims in

two steps:  (1) whether the plaintiff had a constitutionally protected interest and (2) whether the

process afforded was adequate to protect that interest.  *Koessel v. Sublette Cnty. Sheriff's Dep't*,

717 F.3d 736, 748 (10th Cir. 2013).  "[P]roperty interests . . . are not created by the Constitution

but rather . . . by existing rules or understandings that stem from an independent source such as

state law."  *Fisher Sand & Gravel, Co. v. Giron*, 465 F. App'x 774, 779 (10th Cir. 2012)

(quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).  Thus, statutes,

ordinances, contracts, implied contracts, and rules and understandings developed by state officials create and define constitutionally protected property interests. *Id.* "Valid contracts may constitute a property interest for purposes of due process." *Id.* at 779-80.

Count 2 alleges that plaintiff had a property interest in the right to conduct unfettered research, with which the Individual Defendants interfered by stripping him of his status as principal investigator without adequate process. Plaintiff asserts that two sources establish this property right: (1) KUMC's adoption of the American Association of University Professors' *1940 Statement of Academic Freedom and Tenure* ("1940 Statement"); and (2) KUMC's custom and practice created over the course of plaintiff's career at the school. Doc. 106 at ¶ 117. The Court dismissed Count 2 after concluding that plaintiff had failed to allege sufficient facts to assert a plausible property interest in conducting research. *See* Doc. 102 at 36-37; *see Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (noting that on a motion to dismiss, courts "ask whether it is plausible that the plaintiff is entitled to relief"). Because the Court dismissed Count 2 on the first prong of the procedural due process test (whether plaintiff had a constitutionally protected interest), it did not reach the second prong (whether the process afforded was adequate).

**B. Analysis**

Plaintiff's Motion for Reconsideration makes three arguments why it believes the Court erred when it dismissed Count 2. First, plaintiff argues that the Court failed to consider evidence in the record showing that it was KUMC's policy and practice not to strip faculty members of their status as principal investigators. Plaintiff's Second Amended Complaint contained no facts showing that KUMC had such a policy or practice. In his Opposition to the Individual Defendants' Motion for Judgment on the Pleadings ("Opposition"), plaintiff argued, for the first

time, that "he had never been stripped of his status as [principal investigator] or otherwise denied his right to full freedom of research."  Doc. 90 at 18.  But when the Court decided the Individual Defendants' motion for judgment on the pleadings, it disregarded this assertion because plaintiff made it for the first time in his Opposition, not in his Complaint.  Doc. 102 at 37 (citing *Childers v. Indep. Sch. Dist. No. 1 of Bryan Cnty. State of Okla.*, 676 F.2d 1338, 1340 (10th Cir. 1982)); *see also Phillips v. Bell*, 365 F. App'x 133, 138 (10th Cir. 2010) ("[G]enerally, only the complaint and its allegations are considered in a motion to dismiss . . . .").  Although plaintiff calls this a "technical shortcoming," he does not argue that the Court erred by declining to consider this assertion.  Doc. 107 at 3.

Instead, plaintiff argues that the Court should have considered two statements that the Individual Defendants submitted as exhibits to their motions for judgment on the pleadings.  At a May 29, 2012 hearing, plaintiff was asked, "Had you ever been consulted about having your 4 grants taken [?]"  *Id.* at 3-4.  Plaintiff responded, "No.  Quite frankly, I didn't think it was legal, and I had never heard about it before."  *Id.* at 4.  At a November 13, 2013 hearing, defendant Stites testified that it would be an "unusual occurrence" for a faculty member to be stripped of his status as principal investigator.  *Id.*  Plaintiff asserts that these statements are evidence of KUMC's custom not to interfere with professors' research grants.  Still, the Court did not err by failing to consider these statements, which plaintiff references for the first time in his Motion for Reconsideration.  The Court can, in some circumstances, consider matters outside of the pleadings on a motion for judgment on the pleadings without converting it to a motion for summary judgment.  *See* Doc. 102 at 21 (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)).  But the Court need not, and will not, search exhibits for evidence that might support plaintiff's claim without a specific reference.  *See Chavez v. New*

5

*Mexico*, 397 F.3d 826, 839 (10th Cir. 2005) (holding in the summary judgment context that "[w]ithout a specific reference, we will not search the record in an effort to determine whether there exists dormant evidence" which might support the plaintiff's case.); *accord United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). The Court did not commit error by not searching for these two statements.

Second, plaintiff argues that he sufficiently alleged a property interest in the right to conduct research by pleading that KUMC "adopt[ed]" the 1940 Statement. Doc. 106 at ¶ 117. The 1940 Statement provides, "The teacher is entitled to *full freedom in research* and in the publication of the results, subject to the adequate performance of his other academic duties . . . ." Doc. 91-1 at 44 (emphasis added). Plaintiff's Second Amended Complaint never specifies *how* KUMC adopted the 1940 Statement. As discussed above, contracts, implied contracts, and rules and understandings developed by state officials create and define constitutionally protected property interests. *Fisher*, 465 F. App'x at 779. Plaintiff's Opposition asserted that the 1940 Statement, as adopted by the KUMC Handbook, and "[the Individual] Defendants' course of conduct created an implied contract, which in turn creates a property interest." Doc. 90 at 19. But to allege a claim for implied contract under Kansas law, a plaintiff must plead facts making it plausible that it was the "understanding and intent of the parties" to establish an implied contract. *Morriss v. Coleman Co., Inc.*, 738 P.2d 841, 848-49 (Kan. 1987). The Second Amended Complaint contains no such allegations, so the Court rejected this argument.

In his Motion for Reconsideration, plaintiff argues that the University of Kansas had adopted the 1940 Statement in other ways, but the Court need not consider this argument because plaintiff raises it for the first time here. *See In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2009 WL 2777825, at *1 (D. Kan. Aug. 28, 2009) (citing *Welch v. Centex Home Equity Co.*, 323

F. Supp. 2d 1087, 1090 (D. Kan. 2004) ("Reconsideration is not warranted where the movant is simply raising new arguments that could have been presented originally.")).

Plaintiff also argues that "KUMC's Handbook, standing alone, provides sufficient grounds to establish a property interest."  Doc. 107 at 6.  Plaintiff concedes that the Handbook "may not be an express contract of employment . . . ." *Id.*  Indeed, the Handbook states that "the policies described in this handbook are not intended to create a contract between the University of Kansas and its employees."  Doc. 91-1 at 17.  "Factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true" in a motion for judgment on the pleadings.  *Farrell-Cooper Min. Co. v. U.S. Dep't of the Interior*, 728 F.3d 1229, 1237 n.6 (10th Cir. 2013).  Plaintiff thus has failed to make a plausible claim that the KUMC Handbook is an express contract.  To establish a property interest based on the Handbook, then, plaintiff must show that it is an implied contract or evidence of rules and understandings developed by state officials.  *Fisher*, 465 F. App'x at 779.  But as discussed above, plaintiff failed to plead any facts that would make an implied contract or a "rules and understandings" claim plausible.  As a result, plaintiff's allegation that KUMC adopted the 1940 Statement was insufficient to plead a property interest in the right to conduct research.

Finally, plaintiff argues for the first time that his right to continued employment included a protectable property interest in the right to conduct research.  The Court need not address this argument because plaintiff failed to raise it in his original Opposition.  *See In re Urethane Antitrust Litig.*, 2009 WL 2777825, at *1.  Plaintiff's Reply in support of his Motion for Reconsideration (Doc. 113) includes other evidence that he failed to raise in his original Opposition.  So the Court disregards it as well.

In sum, plaintiff has failed to show that the Court's Order dismissing Count 2 of his Second Amended Complaint was clear error.  The Court denies plaintiff's motion for reconsideration.

### III. The Court Grants Plaintiff Leave to File His Third Amended Complaint

As an alternative to reviving Count 2, plaintiff asks the Court to grant permission to amend his complaint to correct the deficiencies the Court identified in its February 2 Order. Plaintiff attaches a copy of his proposed Third Amended Complaint as an exhibit to his motion for reconsideration (Doc. 107-1).  Fed. R. Civ. P. 15(a) provides that the Court "should freely grant leave" to amend "when justice so requires.  A court can deny leave to amend, though, if it determines that amendment would be "futile." *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014).  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Id.* (quotation omitted).

The Individual Defendants argue that the Court should deny plaintiff's request for leave to amend because Count 2 would be subject to dismissal, even as amended.  Specifically, the Individual Defendants assert that they are entitled to qualified immunity because plaintiff cannot show that they violated his clearly established constitutional rights.  The Court rejects the Individual Defendants' argument and grants plaintiff's request for leave to amend.

#### A.  Legal Standard for Qualified Immunity

42 U.S.C. § 1983 provides in part that "[e]very person who, under color of any statute, ordinance, [or] regulation . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  "To ensure that fear of liability will not unduly inhibit officials in the discharge of their duties, the officials may claim qualified immunity." *Fisher*, 465 F. App'x at

778 (quotation omitted).  "Under this principle, government officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* (quotation omitted).

To resolve a motion for judgment on the pleadings on a qualified immunity defense, the Court must evaluate a two-part test:  (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  *Id.*  "The burden is on the plaintiff to prove both parts of this test."  *Id.*  "If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity."  *Id.*  The authorities confer discretion on a court to decide which of the two prongs of the qualified immunity analysis it should address first in light of the circumstances presented by the particular case at hand.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Although qualified immunity defenses are typically resolved at the summary judgment stage, district courts may grant motions to dismiss based on qualified immunity.  *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).  "Asserting a qualified immunity defense via a Rule 12(b)(6) [or Rule 12(c)] motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment."  *Peterson v. Jensen,* 371 F.3d 1199, 1201 (10th Cir. 2004); *see also Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("At [the motion to dismiss] stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'  On summary judgment, however, the plaintiff can no longer rest on the pleadings, and the court looks to the evidence before it (in the light

most favorable to the plaintiff) when conducting the [qualified immunity] inquiry." (citations omitted) (emphasis in original)).

### B. Analysis

Count 2 of plaintiff's proposed Third Amended Complaint alleges that (1) KUMC adopted the 1940 Statement and (2) over the course of plaintiff's 45-year career, KUMC had not stripped a single faculty member from the role of principal investigator on an NIH grant. As discussed above, implied contracts and rules and understandings developed by state officials can create constitutionally protected property interests. *Fisher*, 465 F. App'x at 779. Viewed in the light most favorable to plaintiff, these allegations satisfy his pleading burden to show that he had a property interest in a right to conduct research. *See Hulen v. Yates*, 322 F.3d 1229, 1243-44 (10th Cir. 2003) (holding that a university professor had a property interest in his departmental assignment based on the terms of his school's faculty manual, confirmed by the fact that the university president did not know another time when the school had transferred a tenured professor involuntarily). Plaintiff also alleges that defendants interfered with this property interest by asking the NIH to remove him as principal investigator on four NIH grants without adequate process. These allegations provide sufficient facts to make his procedural due process claim "plausible." *Diversey*, 738 F.3d at 1199. Plaintiff thus has satisfied the first prong of the qualified immunity test. *Fisher*, 465 F. App'x at 778.

Even so, the Individual Defendants argue that they nonetheless are entitled to prevail on qualified immunity because they did not violate plaintiff's "clearly established" rights, the second part of the qualified immunity test. *Id.* "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v.*

*Rickard*, 134 S. Ct. 2012, 2023 (2014).  "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'"  *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality . . . , since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Plumhoff*, 134 S. Ct. at 2023 (quotation omitted).  "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Thomas*, 765 F.3d at 1194 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Assuming plaintiff's allegations are true, as the Court must at this stage, he has met his burden to show that the Individual Defendants violated clearly established law.  In *Perry v. Sindermann*, a university professor argued that the school where he taught had violated his procedural due process rights by refusing to renew his teaching contract.  408 U.S. 593, 595 (1972).  The defendants argued that the plaintiff lacked a property interest in continued employment because his contract had expired and the school had no tenure system.  *Id.* at 596. The Supreme Court disagreed, recognizing that the term "property interest" "denotes a broad range of interests that are secured by 'existing rules or understandings.'"  *Id.* at 601 (citation omitted).  "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to

the benefit and that he may invoke at a hearing." *Id.* Although the plaintiff lacked explicit

tenure rights, the Court concluded that he had "alleged the existence of rules and understandings,

promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to

continued employment absent 'sufficient cause.'" *Id.* at 602-03.

In his proposed Third Amended Complaint, plaintiff alleges that KUMC has adopted the

1940 Statement on freedom of research, as evidenced by the fact that during his 45-year career,

KUMC had not stripped a single faculty member of the status of principal investigator on an NIH

grant.  Viewed in the light most favorable to plaintiff, these allegations, like similar allegations in

*Perry*, create an inference that the Individual Defendants fostered "rules and understandings,"

that the individuals would not interfere with a professor's principal investigator status.  *Id.*  If

such an understanding existed in 2011 or 2013, a reasonable official in the Individual

Defendants' shoes would have realized that plaintiff had a valid interest in his right to conduct

research.  Such an official also would have realized that they were interfering with this interest

by asking the NIH to remove him from the principal investigator role on four grants.  The Court

thus concludes that the allegations in plaintiff's Third Amended Complaint, taken as true, satisfy

his pleading burden to make it plausible that the Individual Defendants were violating his clearly

established rights.

The Court's conclusion is bolstered by a factually similar district court case decided in

the Southern District of New York.  *Hamid v. John Jay Coll. of Criminal Justice*, 99 CIV 8669

WK, 2000 WL 666344 (S.D.N.Y. May 19, 2000).  There, as here, a professor alleged that his

college had deprived him of his procedural due process rights by removing him as principal

investigator on two research grants.  *Id.* at *5.  Citing *Perry*, the *Hamid* court denied qualified

immunity on a motion to dismiss, concluding that the law existing at the time "sufficiently

explained that unwritten 'tenure rights' [*e.g.*, the right to conduct research,] demand the strictures of due process." *Id.* at *7. Because the law was clearly established, the court held that the "plaintiff should have the chance to show that the College fostered a custom or mutual understanding that its faculty and administration would not interfere with a tenured professor's research . . . ." *Id.* at 6.

The allegations in plaintiff's proposed Third Amended Complaint are similar. Taken as true, they support a reasonable inference that an official in the Individual Defendants' position would have realized that interfering with plaintiff's principal investigator status without due process violated his procedural due process rights. Therefore, plaintiff's request for leave to amend is not futile. This case is still in its early stages, and the Individual Defendants make no showing that an order allowing plaintiff to pursue this theory would prejudice them. The Court thus grants leave for plaintiff to file his proposed Third Amended Complaint.[1]

## IV. The Court's February 2 Order Dismissed Plaintiff's State Law Claims Without Prejudice

Finally, plaintiff asks the Court to clarify one aspect of its February 2 Order. The Court concluded that the Eleventh Amendment barred plaintiff's state law claims, Counts 9-14 of the Second Amended Complaint, and therefore dismissed them. Plaintiff asks the Court to specify whether it dismissed those claims with or without prejudice. "[A] dismissal on sovereign immunity grounds . . . must be without prejudice." *Rural Water Sewer & Solid Waste Mgmt.,*

---

[1] On April 15, 2015, plaintiff filed a notice (Doc. 118) informing the Court that his proposed Third Amended Complaint, attached as an exhibit to his Motion for Reconsideration, contained an error. Specifically, Count 6 "inadvertently asserts a claim against the state entity defendants—the University of Kansas, the University of Kansas School of Medicine, and the University of Kansas Medical Center." Doc. 118 at 1. To remedy this error, plaintiff proposed the following solution: "in the event that this Court allows Plaintiff to file a Third Amended Complaint, when Plaintiff formally files the Third Amended Complaint, Plaintiff will remove the state entity defendants from all counts including Count 6." *Id.* The Court accepts this proposal and instructs plaintiff to remove the entity defendants from the claim presented by Count 6 of his Third Amended Complaint before filing it.

*Dist. No. 1, Logan Cnty., Okla. v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011).

The Court clarifies that its February 2 Order dismissed plaintiff's state law claims *without*

prejudice.

**V.   Conclusion**

The Court denies plaintiff's motion for reconsideration because plaintiff failed to plead

sufficient facts in his Second Amended Complaint to make his alleged property interest in the

right to conduct research plausible.  However, the Court grants plaintiff's request for leave to

amend his complaint.  Plaintiff must file his Third Amended Complaint within seven days of the

date of this Order.  Finally, the Court clarifies that it dismissed plaintiff's state law claims

without prejudice in its February 2 Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for

Reconsideration and Clarification (Doc. 108) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 15th day of May, 2015, at Topeka, Kansas.**


                                        **s/ Daniel D. Crabtree_____**
                                        **Daniel D. Crabtree**
                                        **United States District Judge**

14