**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CURTIS KLAASSEN, Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-2561-DDC |
| | ) | |
| BARBARA ATKINSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is present before the court upon plaintiff's Second Motion to Compel (ECF No. 149). Plaintiff seeks production of responsive documents to his First Request for Production of Documents. He also asks the Court to reopen Dr. Douglas Girod's deposition. Having carefully reviewed the arguments of the parties, the court is now prepared to rule.

I. Plaintiff's Claims

Plaintiff was a long-time tenured professor for the University of Kansas at the University of Kansas School of Medicine ("KUMC"). Plaintiff alleges the individual defendants retaliated against him, including terminating him from employment, and violated federal and state laws after he criticized KUMC for financial mismanagement, misuse of grant funds, and other misconduct. Specifically, plaintiff asserts seven claims in his third-amended complaint. He has named eleven employees or former employees of KUMC as defendants. In the first four claims, he asserts constitutional and civil rights violations under 42 U.S.C. §§ 1983 and 1988. In the last three claims, he alleges state law claims. In the third-amended complaint, plaintiff alleges that (1) the eleven defendants retaliated against him in a variety of employment decisions in violation of the First Amendment; (2) eight of the defendants violated his procedural due process rights by stripping him of his grants from the National Institutes of Health ("NIH"); (3) two of the

defendants violated his procedural due process rights in a hearing on November 13, 2013; (4) defendant Girod violated his substantive due process rights in the hearing on November 13, 2013; (5) five of the defendants committed the tort of interference with a prospective business advantage when they interfered with his relationship with the NIH; (6) defendant Stites converted plaintiff's property when he refused to provide access to certain property located at KUMC; and (7) three defendants committed tortious interference with a contract when plaintiff was terminated without following the procedures set forth in the KUMC Handbook for Faculty and Unclassified Staff.[1]

II. Discovery Background

Plaintiff served his First Request for Production of Documents on October 8, 2015. Defendants responded with a variety of objections to some of these requests. The parties then met and conferred concerning the objections. They were able to resolve some but not all of the disputes. Plaintiff now seeks an order compelling the defendants to amend their responses, identify any withheld documents, and produce all responsive documents.

A deposition of Dr. Douglas Girod was conducted by plaintiff on October 21, 2015. Certain objections were raised by the parties during that deposition. Plaintiff seeks an order asking the court to reopen that deposition.

Plaintiff now seeks three remedies. First, he asks the court to order the defendants to amend their responses to identify responsive documents by Bates Number, identify whether any documents are withheld on the basis of relevancy objections, and to strike defendants' general objections. Second, he requests the court compel production of documents identified in specific

[1] Pl.'s Third Am. Com. (ECF No. 121) at 19-41.

requests. Finally, he asks the court to reopen Dr. Girod's deposition because of defendants' "improper and confusing 'confidentiality' objections."[2]

A. Defendants' General Objections

1. Alleged Failure to Organize and Label

Plaintiff argues that defendants' responses to his discovery requests are inconsistent with the court's requirements. Plaintiff initially contends that defendants engaged in improper practices by responding to numerous discovery requests by generally referring to unidentified and previously produced documents. Plaintiff asks the court to order defendants to serve discovery responses that identify the documents responsive to his discovery requests with particularity.[3]

Defendants note initially that they have already engaged in the following discovery in the state and federal litigation initiated by plaintiff: (1) responded to 197 discovery requests seeking documents from at least 33 different custodians; (2) produced more than 78,000 pages of documents; and (3) incurred more than $200,000 in expenses associated with the production of documents sought by plaintiff.

Defendants contend this is not a case where they have failed to organize and label documents produced. Rather, defendants assert that many of the documents produced in response to plaintiff's First Set of Requests had already been produced in other litigation and were categorized and labeled on those occasions. Defendants acknowledge that they did not re-search and re-produce the previously produced documents in an effort to save substantial resources. Defendants assert, however, that they did categorize the 10,000 additional pages of

[2] Pl.'s Mem. in Supp. of Mot. To Compel (ECF No. 150) at 5.

[3] Plaintiff notes the following discovery requests as ones that defendants failed to respond to with particularity: Request Nos. 1-2, 7, 13-16. 18-22, 26-28, 37-41, 43-44, 46-48, 55, 66, 70-73, 82-88, 98 and 121.

documents that were produced. Defendants argue it would costly and time-consuming to respond to plaintiff's requests "with little or no return on the investment."[4]

Federal Rule of Civil Procedure 34(b)(2)(E) sets out the procedures for producing documents or electronically stored information. It provides that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."[5] This provision was added by the 1980 amendments because of a concern that litigants were deliberately mixing critical documents with masses of other documents to hide their existence or obscure their significance.[6]

Defendants have not suggested they produced these documents as they are kept in the usual course of business. Rather, defendants argue that they produced them without labeling and organizing because they have already produced many of these documents. The court notes that defendants fail to provide any case law to support their position. The court finds no reason why the defendants should not comply with Rule 34. Defendants should have organized and labeled the documents as required by Rule 34(b). Since the documents have already been provided to plaintiff, the easiest way for defendants to comply with the "organize and label" requirement would be for defendants to identify--by the Bates Numbers they have already stamped on the documents--which documents are responsive to each of the document requests, as plaintiff has requested. Within twenty-one (21) days of the filing of this order, defendants shall serve amended discovery responses to those requests that it responded to by referring plaintiff to "previously produced" documents, and shall identify by Bates Stamp Number which documents are responsive to which requests.

2. Efforts to limit production to "relevant, non-privileged" documents

---

[4] Defs.' Resp. in Opp'n to Pl.'s Motion to Compel (ECF No. 159) at 6.
[5] Fed.R.Civ.P. 34(b)(2)(E)(i).
[6] See Fed.R.Civ.P. 34(b) advisory committee's note (1980 Am.).

Plaintiff next contends that defendants cannot unilaterally limit production to "relevant, non-privileged" documents. Plaintiff points out that defendants have responded to a number of his requests with objections based on relevancy and then agreed to "produce responsive documents, agree[d] to produce responsive documents in the future, or state[d] they have produced 'responsive, non-privileged documents.'"[7] Plaintiff notes that, despite the relevance objection, defendants never explain why they believe the request seeks irrelevant information. Plaintiff asks the court to order defendants to amend their responses to certain requests to make clear that no responsive documents are being withheld.[8] Plaintiff also asks for an order requiring that, if defendants did withhold documents responsive to certain requests because of an alleged lack of relevance, defendants be ordered to produce those documents.[9]

Defendants contend they have explained their analysis of relevance. In fact, defendants suggest they have reached an agreement with plaintiff on this issue. Defendants contend that plaintiff has sought documents "that have no bearing on any of the claims or defenses in this litigation" and they have given "every benefit of the doubt . . . in favor of production."[10] Specifically, defendants note that they ran the specific keyword searches requested by plaintiff, but did not produce every document "with a hit on a keyword."[11] They failed to produce certain documents "[i]n an effort to reduce the volume of irrelevant and potentially confidential or sensitive documents produced in this already document-intensive case."[12] Finally, defendants contend that plaintiff's requests are neither relevant to the claims and defenses in this case nor proportional to the needs of the case.

---

[7] Pl.'s Mem. in Supp. of Mot. to Compel at 6.

[8] Plaintiff seeks an order for the following requests: Request Nos. 29, 30, 49, 50, 51-59, 63, 66, 66, 67, 82, 88, 93, 95, 97, 115, 117, 118, 120 and 124.

[9] Plaintiff points to the following discovery as the object of this request: Request Nos. 29, 30, 49, 50, 51-59, 63, 66-67, 82, 88, 93, 95, 97, 115, 117, 118 120 and 124.

[10] Defs.' Res. In Opp'n to Mot. to Compel at 8.

[11] Id. at 9.

[12] Id.

Plaintiff contends that no agreement was reached on this issue as suggested by defendants. Plaintiff argues that defendants have provided no information that would establish the lack of relevance of any of the documents. Plaintiff asserts that defendants are essentially asking the court to "trust them" that any documents withheld are irrelevant. Plaintiff contends that the best course of action is for defendants to submit all responsive documents.

"[A] party may not unilaterally withhold information or documents that are responsive to a discovery request by stating that 'all relevant, non-privileged' responsive information or documents have been, or will be, produced."[13] "If a discovery request seeks facially relevant information or if the proponent has demonstrated relevance, the party resisting discovery must establish the lack of relevance by demonstrating that the requested discovery either (1) is outside the scope of relevance as defined by Rule 26(b), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad discovery."[14] The problem with conditional responses is that the requesting party "is left guessing as to whether [the producing party] has produced all documents, or only produced some documents and withheld others[.]"[15] As observed by Judge James P. O'Hara in *Sprint Communications v. Comcast Cable Communications*, the common practice of asserting conditional objections is manifestly confusing and potentially misleading.[16] A party may object to a portion of a request for production, provided the response specifies the portion objected to

[13] *Johnson v. Kraft Foods N.A., Inc.*, 236 F.R.D. 535, 541 (D.Kan. 2006).

[14] *Stouder v. M&A Tech., Inc.*, No. 09-4113-JAR, 2011 WL 673763, at * 5 (D.Kan. Feb. 17, 2011).

[15] *Pro Fit Mgmt. v. Lady of Am. Franchise Corp.*, No. 08-2662-JAR-DJW, 2011 WL 939226, at *7-*9 (D. Kan. Feb. 25, 2011).

[16] Nos. 11-2684-JWL, 11-2685-JWL, 2014 WL 545544, at *2 (D. Kan. Feb. 11, 2014).

and responds to the non-objectionable portion.[17] But "[o]bjecting but answering subject to the objection is not one of the allowed choices under the Federal Rules."[18]

The court fails to find that any agreement was reached by the parties on this issue. The court believes that the requests made by plaintiff seek information that appears facially relevant. Moreover, as correctly pointed out by plaintiff, defendants have provided no information that would establish the lack of relevance of any of the documents. The court notes that defendants have produced two examples of the documents they state are "examples of the kinds of documents that were withheld." The court is not persuaded that this showing supports defendants' contention that they should be able to "object, yet produce" only the documents they believe are relevant. Accordingly, the court orders defendants to produce all responsive documents to Request Nos. 29, 30, 49, 50, 51-59, 63, 66-67, 82, 88, 93, 95, 97, 115, 117-188, 120 and 124 within twenty-one (21) days of the date of this order.

3. General Objections

Plaintiff next contends that defendants' general objections are hypothetical and meaningless. Plaintiff points out defendants lodged a general objection at the outset of his First Request for Production. This objection indicated that defendants believed that plaintiff's requests were "overly broad, vague, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence." Plaintiff asserts the court should strike the defendants' general objections.

Defendants assert that no documents are being withheld on the basis of general objections. Defendants suggest they would have so notified plaintiff's counsel if he had

---

[17] *Id.* (citing Fed. R. Civ. P. 34(b)(2)).
[18] *Id.* (quoting *Tardif v. People for the Ethical Treatment of Animals*, No. 2:09-cv-537-FTM-29SPC, 2011 WL 1627165, at *1 (M.D. Fla. Apr. 29, 2011)).

contacted them prior to filing this motion. Defendants argue that this request should be denied because of plaintiff's failure to comply with the meet-and-confer requirements.

Plaintiff agrees, based on the defendants' response, that his request to strike defendants' general objections should be denied as moot. He, however, disagrees with defendants' contention that he failed to comply with the court's meet-and-confer obligation.

Plaintiff reiterates that defendants' contentions that some of his requests for production of documents seek information that is not relevant or admissible and is overbroad and unduly burdensome are without merit. But, plaintiff recognizes that some of these issues have been resolved through further communications and supplemental responses provided by the defendants.

The court finds no further need to comment on this issue. The court believes that these objections are now moot.

4. Claims of lack of relevance, overbroad and undue burden

Finally, plaintiff contends defendants' objections to certain discovery as lacking relevancy and overbroad and unduly burdensome are without merit.[19] Plaintiff asks that the court order defendants to produce the requested information and documents. Following defendants' response, plaintiff's replied that some of these issues have resolved by the parties through further communication. The court is not persuaded that any additional rulings on these objections are necessary. Most were resolved by the parties. The court will address the remaining matters in the following part of this order.

B. Defendants' Specific Objections

[19] Plaintiff points to the following: Request Nos. 8-9, 12, 29-30, 33, 51, 60-62, 64, 79. 87-93, 99-112, 119 and 122-23.

Plaintiff seeks to compel the production of documents identified in specific requests. He asks that the court order the defendants to produce information on the following matters: (1) Request Nos. 8, 9 and 12—NIH Grants; (2) Request Nos. 29 and 30—Laboratory Complaints; (3) Request No. 33—Slush Fund; (4) Request No. 51—Correspondence from Robert Klein to plaintiff's Due Process Witnesses; (5) Request No. 79—Chancellor Gray-Little Correspondence; (6) Request Nos. 99-112—Financial Information of Conspirators; and (7) Request Nos. 61 and 62—Dr. Barbara Atkinson. In response, defendants contended that some of plaintiff's requests were moot. Plaintiff agreed that the following were moot and withdrew these requests: (1) Request Nos. 8, 9, 12—NIH Grants; (2) Request No. 33—Slush Fund;[20] (3) Request No. 51—Correspondence from Robert Klein to plaintiff's Due Process Hearing Witnesses; and (4) Request Nos. 99-112—Financial Information of Conspirators. The court now turns to the matters that remain in dispute.

1. Request Nos. 29 and 30—Laboratory Complaints

Requests 29 and 30 seek information related to grievances, charges or complaints sent to either the University of Kansas' Human Resources Department or its Equal Opportunity Office by plaintiff, any member of plaintiff's laboratory, Helen Renaud, Julia Cui, Ivan Csnaksy, Jerry Jie Liou or Edugie Ekuase. Plaintiff has indicated that he agreed to a temporal limit on these requests of June 1, 2011 through November 30, 2013. Defendants' response to plaintiff's motion to compel is somewhat confusing. On the one hand, defendants contend that the parties reached an agreement on this dispute. They ask that this aspect of the defendants motion be considered moot because "[they] have produced all documents they have located that are responsive to these requests, and not presently withholding any responsive documents on the

[20] Plaintiff asks that he be allowed to raise this issue again if the deposition of Dr. Buddha Dawn produces testimony contrary to the representations in defendants' response. The court will allow plaintiff to raise the issue again if the deposition produces contrary information.

basis of relevance, over-breadth, or undue burden."[21] They contend, however, that their relevance and overbreath objections are appropriate and ask that they not be required to produce additional documents that are responsive to these requests but are unrelated to plaintiff's complaints. Defendants also note they have limited their response to the specifically identified individuals in the requests and have not provided documents on "any member of Plaintiff's laboratory" because this request is vague and ambiguous.

The court agrees with defendants' contention that the requests should be limited to the individuals named in the requests and thus sustains their objections in part. Defendants shall not be required to guess who constitutes a "member" of plaintiff's laboratory. The court, however, disagrees with defendants' approach to other information that may be discovered. Pursuant to their continuing obligations, defendants shall produce any additional responsive documents within twenty-one (21) days of the date of this order.

2. Request No. 79—Chancellor Gray-Little Correspondence

In this request, plaintiff seeks correspondence and documents from Chancellor Gray-Little that contain any reference to him since January 1, 2010. Defendants initially argue that this request was not part of any meet-and-confer discussions between the parties, and they were not aware that plaintiff had any remaining concerns about this request. Defendants also contend this request seeks information that is not relevant and is overbroad.

The court finds that Request No. 79 was a part of the meet-and-confer discussions between the parties. The court notes that it was specifically referenced in the "Golden Rule" letter sent by plaintiff to defendants and was discussed along with other related requests.

Defendants' response to this request is again confusing. Defendants initially suggest that they have already produced this information in plaintiff's state court case. Nevertheless,

[21] Defs.' Mem. in Opp'n to Pl.'s Mot. to Compel at 14.

defendants also contend that this request is not relevant to any of the claims asserted in this case and it is "overbroad and unreasonable to request the production of every e-mail referring to [plaintiff] for a five-year period."[22]

The court is not persuaded by defendants' relevance argument. Plaintiff has alleged that he met with Dr. Gray-Little in early 2010 regarding the concerns that form the basis of his First Amendment retaliation claim. Plaintiff also notes that Dr. Girod indicated that he consulted with Dr. Gray-Little when he terminated him. Plaintiff suggests that the instant request is broader than the one raised in the state court litigation because plaintiff now seeks the production of e-mails concerning what information Dr. Gary-Little may have had or discussed with others concerning his First Amendment retaliation claim. The court believes this request is relevant to the claims in this case. Plaintiff seeks only those e-mails with references to him. The court does not find this request overbroad. Defendants shall execute a search of the documents responsive to this request and produce the responsive documents within twenty-one (21) days of the date of this order.

3. Request Nos. 61 and 62—Dr. Barbara Atkinson

Request No. 61 seeks production of "the final and any preliminary drafts of the major accounting report, which was initiated soon after Dean Atkinson and the Dean of Finances departed from KUMC." Request No. 62 seeks production of "the final and preliminary drafts of the faculty evaluation of Barbara Atkinson's performance, which the Chancellor reported was complete on Oct 25, 2011."

In response to Request No. 61, defendants state they "have not located any responsive documents, nor have [they] located any evidence of any such audit occurring." Thus, they initially argue this aspect of defendants' motion is moot. But, they next assert "even if an audit

[22] Defs.' Mem. in Opp'n to Pl.'s Mot. to Compel at 19.

had occurred, the information would not be relevant to plaintiff's claims in this lawsuit." Plaintiff contends that defendants should simply state, without objection, that there was no financial report or audit of Dr. Atkinson's handling of KUMC financial affairs. He contends the court should strike defendants' objection to Request No. 61.

The court is persuaded that this request is moot. The court is aware that defendants have stated that no such accounting report or audit exists. This is an appropriate response to plaintiff's request. To the extent that defendants are asserting a relevancy objection, it is overruled because the court finds that the information is facially relevant and defendants have not supported their objection.

In Request No. 62, plaintiff seeks the final and preliminary drafts of the faculty evaluation of Dr. Atkinson's performance. Defendants contend this evaluation should not be ordered disclosed because it is irrelevant to the claims asserted by plaintiff and contains confidential information. Defendants suggest that Dr. Atkinson's effectiveness in the Executive Vice Chancellor role has no bearing on plaintiff's success or failure in any of his claims. In addition, defendants contend that the evaluation "contains both confidential information about Dr. Atkinson as well as information about Dr. Atkinson shared by professors and other members of the KUMC community with a promise that the information (and the contributors' identities) would be kept confidential." Defendants argue that disclosure of this information threatens the viability of the evaluation process.

Plaintiff asserts that Dr. Atkinson's evaluation is relevant. Plaintiff points out that, after Dr. Atkinson fired him as Chair of the Pharmacology Department, a series of articles appeared in the Lawrence Journal-World regarding Dr. Atkinson's leadership. Plaintiff notes that in an article on October 29, 2011 in the Lawrence Journal it was stated that Dr. Atkinson's evaluation

was "shockingly bad" and identified one of the reasons for the bad evaluation as Dr. Atkinson's decision to fire plaintiff from his Chair position for "highly questionable and suspect reasons." Plaintiff further notes that, less than 70 hours later, KUMC escorted him off campus with the assistance of armed police.  Thus, plaintiff contends Dr. Atkinson's "shockingly bad" evaluation is facially relevant to his claims.

The court is persuaded that the evaluation may have some relevance to plaintiff's claims. The court is not persuaded that confidentiality precludes the disclosure of the evaluation.  First, "[a] concern for protecting confidentiality does not equate to a privilege."[23]  In fact, "it is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery."[24]  The federal rules simply provide no basis upon which defendants may refuse to disclose relevant, nonprivileged discovery merely because the discovery request seeks information they consider confidential.[25]  Accordingly, the court directs defendants to comply with Request No. 61 within twenty-one (21) days of the date of this order. However, this document, its disclosure and use, shall be subject to the terms of the Protective Order (ECF No. 119) previously entered in this case.

C.   Dr. Girod's Deposition

Finally, plaintiff seeks to reopen Dr. Girod's deposition because defense counsel improperly (1) instructed Dr. Girod not to answer questions regarding comparators to plaintiff, and (2) coached Dr. Girod during deposition breaks.

During the course of Dr. Girod's deposition on October 21, 2015, plaintiff's counsel questioned Dr. Girod regarding personnel matters involving other professors at the University of

---

[23] *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05–2164–MLB–DWB, 2007 WL 1246216, at *2 (D.Kan. Apr. 27, 2007).
[24] *High Pt. Sarl v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2011 WL 3241432, at *2 (D. Kan. July 29, 2011)(quoting *Dean v. Anderson*, No. 01–2599–JAR, 2002 WL 1377729, at *3 (D. Kan. June 6, 2002)).
[25] *Id*.

Kansas since Dr. Girod has been employed there—a time period spanning 21 years. Dr. Girod did answer questions regarding the types of personnel decisions, the approximate date of such decisions, the names of the professors, whether an investigation was conducted and by what department, and the general reason for each personnel decision. During the deposition, plaintiff's counsel stated the following:

> Subject to the protective Order we will allow him to go a certain distance. Obviously, we believe that this getting extremely far afield from anything that is relevant to, to the Klaassen case. It borders on the burdensome and harassing and, type of information. That having been said, we'll listen to the questions and see what those specific questions are, but this line of testimony will be subject to the protective order.

Dr. Girod testified regarding four professors that have been removed as department chairs. Of the individuals discussed, three of the four were removed between five and almost fifteen years ago. The fourth individual was removed more than four years after plaintiff was removed as department chair, was not removed by the same individual that removed plaintiff, was not removed as principal investigator on any NIH grants, and was not terminated.

Defendants contend that the information sought by plaintiff is not relevant because the professors identified in Dr. Girod's deposition are not comparator employees. Defendants argue that plaintiff has admitted he does not have a legal claim based upon his removal from the chair position. Moreover, defendants note that the other professors did not report to the same supervisor as plaintiff, the personnel decisions about those professors were not made by the same people that made the decisions concerning plaintiff, and the decisions concerning the other professors were not made in a comparable time frame. Defendants contend that the discovery sought by plaintiff is not proportionate and is not within the scope of discovery under Rule 26(b). Defendants also suggest that this information contains confidential information about other employees and its release would be unreasonable. Defendants contend that if the court

determines that plaintiff is entitled additional information relating to these professors, then plaintiff should be ordered to seek the information through interrogatories. Defendants argue that re-opening Dr. Girod's deposition is not the most efficient manner for plaintiff to discover this information due to Dr. Girod's limited knowledge of the details surrounding the other professors' personnel actions.

The court is persuaded that the information sought by plaintiff is relevant to his claims in this case. In Count 1, plaintiff claims that the defendants retaliated against him in violation of his First Amendment when they took certain employment actions. Included among the alleged employment actions is the removal of plaintiff from his position of chair of the Pharmacology and Toxicology Department. In Count 2, plaintiff asserts that the defendants violated his procedural due process were violated when he was stripped of his status as principal investigator of multiple NIH grants. He also alleges that no other faculty member was ever removed as a principal investigator of NIH grants. These allegations allow plaintiff to discover information of similarly situated faculty members.

The court next turns to defendants' contention that concerns of confidentiality bar this discovery. The issue is well-settled that a concern for protecting confidentiality does not equate to privilege, and that information and documents are not shielded from discovery on the sole basis that they are confidential.[26] Accordingly, the court finds no merit to defendants' confidentiality objections.

Finally, the court considers defendants' argument that the discovery sought by plaintiff is not proportionate and is not within the scope of discovery under Rule 26(b). The court finds that this argument is waived because it was raised for the first time in plaintiff's response to defendant's motion to compel.

[26] *Id*.

With these rulings, the court shall grant this aspect of plaintiff's motion. The court shall allow plaintiff to re-open Dr. Girod's deposition at defendant's cost. With this ruling, the court finds it unnecessary to consider plaintiff's arguments on defense counsel improperly coaching Dr. Girod since the court has already granted the remedy sought by plaintiff.

III.     Fees and Expenses

Plaintiff seeks to recover sanctions against the defendants in the form of the expenses and attorney fees he incurred in bringing the Motion to Compel. Federal Rule of Civil Procedure 37(a)(5)(C) allows a court to impose sanctions where a motion to compel is granted in part and denied in part. Under that rule, the court may "apportion the reasonable expenses for the motion."

The court overruled most of the defendants' objections, many of which the court finds were not substantially justified. The court deems it just and appropriate to allow plaintiff to recover a portion, if not all, of the reasonable expenses and attorney fees that he incurred in bringing the Motion to Compel against the defendants. To aid the court is determining the proper amount of expenses, plaintiff shall file, within twenty-one (21) days of the date of filing of this order, a pleading in which he sets forth the amount of expenses that plaintiff seeks to recover against the defendants and an affidavit itemizing the expenses, including attorney fees, that plaintiff incurred in bringing this Motion to Compel against the defendants. The defendants shall have fourteen (14) days thereafter to file a response. The court will then issue a second order, apportioning the expenses and fees and specifying the amount and time of payment unless the parties have resolved this matter.

Accordingly,

**IT IS THEREFORE ORDERED** that plaintiff's Second Motion to Compel (ECF No. 149) be hereby granted in part and denied in part as set forth in this order.

**IT IS FURTHER ORDERED** that plaintiff's request for attorney's fees and expenses arising from the filing of the Second Motion to Compel (ECF No. 149) be hereby granted as set forth in this order.

**IT IS SO ORDERED.**

Dated this 2nd day of June, 2016, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge