## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CURTIS KLAASSEN, Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13-2561-DDC |
| | ) | |
| BARBARA ATKINSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This matter comes before the court upon plaintiff's Motion to Compel Regarding Defendants' Privilege Log (ECF No. 226). Plaintiff seeks a court order compelling defendants to produce certain documents identified on defendants' privilege log. As explained below, defendants have shown that the documents are attorney-client privileged, and so plaintiff's motion to compel is denied.

### I.      Background

On October 31, 2013, plaintiff, a longtime tenured medical professor, filed suit against the University of Kansas Medical Center (KUMC) and various high-ranking KUMC officials in their individual and official capacities. He alleges defendants retaliated against him—including eventually terminating his employment—after he criticized KUMC and certain KUMC officials for alleged financial mismanagement, misuse of grant funds, and other misconduct. Plaintiff asserts multiple claims against various defendants, including a First Amendment retaliation claim, due process claims, and various state law claims.

On May 25, 2012, plaintiff filed suit in this district after his employer set a hearing to consider alleged incidents of unprofessional behavior.[1] Plaintiff sought a court order restraining

---

[1] *See Klaassen v. Kan. Board of Regents*, No. 12-2326-JTM.

the hearing from occurring. Sara Trower, an attorney in the University of Kansas' general counsel's office, also served as counsel of record in that matter. The court ultimately denied plaintiff's motion for a temporary restraining order and dismissed the case for lack of subject-matter jurisdiction. The due process hearing proceeded as scheduled on May 29, 2012, with Ms. Trower serving in a prosecutorial role. Defendant Dr. Steven Stites, the acting executive vice chancellor, served as the decision-maker and ultimately adopted the ad hoc committee's recommendation to publicly censure plaintiff. He communicated his decision through a letter dated June 12, 2012. Plaintiff seeks communication between Ms. Trower and Dr. Stites and several other individuals concerning the June 12 letter ultimately provided to plaintiff.

Ms. Trower entered her appearance in this case on November 1, 2013. Shortly thereafter, on November 13, 2015, a second due process hearing began, with Ms. Trower again serving in a prosecutorial role. Defendant Dr. Douglas Girod considered the recommendation of the second faculty ad hoc committee and ultimately decided to terminate Dr. Klaassen's employment in a letter dated January 6, 2014. Plaintiff also seeks communications between Dr. Girod and various members of KU's general counsel's office concerning the January 6 letter ultimately provided to plaintiff. Ms. Trower withdrew her appearance from this case on July 6, 2016.

## II.   Discussion

In objecting to the production of these documents, defendants contend that they are both irrelevant and attorney-client privileged. The court declines to address defendants' relevance objection because the court holds—for the reasons stated below—that defendants have established the documents are shielded from discovery by the attorney-client privilege.

Plaintiff asserts both federal and state law claims. The Tenth Circuit has previously found that when a party asserts federal and state law claims, the court should consider both bodies of

law.[2] But the Tenth Circuit has also directed that when a case involves both federal claims and pendent state law claims, "as to the state causes of action, a federal court should look to state law in deciding privilege questions."[3] Of course, "the court and litigants are not always able to parse out what discovery or evidence supports a federal claim as opposed to a state claim."[4] Here, however, plaintiff states that the discovery sought is relevant to his due process claims.[5] So, the court will apply federal law. Because the elements of the attorney-client privilege do not materially differ under federal law or Kansas law,[6] the court would reach the same conclusion regardless of which body of law applies.

The Tenth Circuit in *In re Grand Jury Proceedings*[7] defines the scope of the attorney-client privilege as follows:

> The attorney-client privilege protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor. The mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege; rather, the communication between a lawyer and client must relate to legal advice or strategy sought by the client.[8]

---

[2] *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1368 (10th Cir. 1997).

[3] *Id.* (citing *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995)).

[4] *Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2012 WL 1207232, at *8 (D. Kan. Apr. 11, 2012).

[5] Mem. in Supp. of Mot. to Compel Regarding Defs.' Privilege Log at 1, ECF No. 227.

[6] *See C.T. v. Liberal Sch. Dist. USD 480*, No. 06-2093-JWL, 2008 WL 217203, at *2 (D. Kan. Jan. 25, 2008) (stating that no conflict between the two bodies of law exist and that "whether the Court applies federal or Kansas law generally makes no difference in determining whether attorney-client privilege applies").

[7] 616 F.3d 1172 (10th Cir. 2010).

[8] *Id.* at 1182 (internal quotations and citations omitted).

The privilege also protects attorney-to-client communications that "would have a tendency to reveal the confidences of the client."[9] Underlying facts, however, do not become privileged by relaying them to an attorney.[10]

"The burden of establishing the applicability of the attorney-client privilege rests on the party seeking to assert it."[11] "The party must bear the burden as to specific questions or documents, not by making a blanket claim."[12] The court must strictly construe the attorney-client privilege and permit it "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."[13]

Defendants' brief, privilege log, and the affidavit of Ms. Trower establish that the attorney-client privilege applies to the communications at issue here. In particular, Ms. Trower's affidavit states that as an in-house attorney, her client is KU and its various subordinate units, including KUMC.[14] She states that after plaintiff's first due process hearing, Dr. Stites sought her legal advice as a member of the general counsel's office in effectuating his decision to discipline plaintiff.[15] She viewed him to be acting in his official capacity as the acting executive vice

---

[9] *Id.*(citing Kenneth S. Brown, *McCormick on Evidence* § 89 (6th ed. 2006); *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990)).

[10] *Id.*

[11] *Id.* (quoting *In re Grand Jury Subpoena*, 697 F.2d 277, 279 (10th Cir. 1983)).

[12] *Id.* (quoting *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999).

[13] *Id.* (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting *Elkins v. United States*, 364 U.S. 206, 234 (1960)).

[14] Aff. of Sara Trower at 2, ECF No. 229-3.

[15] *Id.* at 2, ECF No. 229-3.

chancellor for KUMC when she provided the requested legal advice.[16] She states that the communication she had with Dr. Stites has been at all times maintained as confidential.[17] The privilege log shows e-mails between Ms. Trower and Dr. Stites, with some e-mails either directed to or carbon copying other KUMC staff or KU's general counsel.[18] One communication appears to be an e-mail from Ms. Trower that Dr. Stites forwarded to two spokespersons for the university.[19]

With respect to the communications appearing on the privilege log related to Dr. Girod's January 6 letter, Ms. Trower sates that she was not asked to assist or advise Dr. Girod in preparing the letter.[20] The privilege log and Ms. Trower's affidavit show that she was carbon copied on an e-mail string relating to the preparation of the letter. Her affidavit states that the e-mail string concerns confidential communications regarding strategy as it related to future communications regarding "an ongoing legal matter" in which she was involved as counsel.[21] The privilege log shows e-mails primarily between Chari Young, an attorney in KU's general counsel's office, and Dr. Girod, with various other e-mails either directed to or carbon copying other individuals from KUMC or attorneys in the general counsel's office.[22] All communications took place after plaintiff had commenced litigation.

---

[16] *Id.*

[17] *Id.*

[18] *See* Defs.' Privilege Log at 4, 6, ECF No. 229-2.

[19] *Id.* at 6.

[20] Aff. of Sara Trower at 2, ECF No. 229-3.

[21] *Id.* at 3.

[22] *See* Defs.' Privilege Log at 3, ECF No. 229-2.

Plaintiff argues that because Ms. Trower acted in a prosecutorial capacity during the hearings, she could not also represent the decision-makers for the hearings. In other words, no attorney-client relationship could exist during the time between when she presented evidence for each respective due process hearing and the time between when the decision-makers issued their respective disciplinary sanctions. Plaintiff relies on the Kansas Rule of Professional Conduct 1.12, which states that that "a lawyer should not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person or as an arbitrator, mediator or other third-party neutral . . . "

Plaintiff's argument mischaracterizes Ms. Trower's role during the relevant time period and mischaracterizes her clients as the decision-makers. The attorney-client privilege may attach to communications with in-house counsel for organizational entities  such as corporations or universities.[23] When the organization entity has its own staff of lawyers, courts often invoke the analogy of corporate in-house counsel when considering the application of the privilege.[24] That inquiry focuses on "whether the communications were made at the request of management in order to allow the corporation to secure legal advice."[25] The court focuses on the communication involved and the position of the employee with whom counsel had communications.[26] "Any privilege resulting from communications between corporate officers and corporate attorneys

---

[23] *See Upjohn Co. v. United States*, 449 U.S. 383 (1981).

[24] 24 Kenneth W. Graham, *Federal Practice and Procedure*, § 5475 (1st ed.).

[25] *Boyer v. Bd. of Cnty. Comm'rs of Cnty. of Johnson*, 162 F.R.D. 687, 689 (D. Kan. Aug. 15, 1995).

[26] *Id.*

concerning matters within the scope of the corporation's affairs and the officer's duties belongs to the corporation and not the officer."[27]

In this case, the communications with Drs. Girod and Stites involved legal advice concerning the forthcoming disciplinary letters issued to plaintiff. Drs. Girod and Stites were acting within the scope of their duties and in furtherance of the university's affairs. The privilege does not belong to them, and they, as individuals, did not become the clients of Ms. Trower or the other attorneys in the general counsel's office. Plaintiff's arguments concerning alleged due process violations or alleged conduct that runs afoul of the Kansas Rules of Professional Conduct do not go to the elements of the attorney-client privilege. In other words, they are separate inquiries. Moreover, plaintiff's arguments concerning Ms. Trower's role would not appear to apply to the communications involving Dr. Girod, as Ms. Trower was merely copied on those communications and does not appear to have advised Dr. Girod.

Because defendants have shown the requested material is privileged, the court denies plaintiff's motion to compel. Because the court denies in full plaintiff's motion to compel, it must consider whether to award defendants reasonable expenses, including attorney fees, incurred as a result of opposing this motion.[28] Fed. R. Civ. P. 37(a)(5)(B) requires that when a motion to compel is denied in full, the court must award the nonmoving party reasonable expenses incurred in opposing the motion, including attorney fees, unless the motion to compel was substantially justified or other circumstances make an award of expenses unjust. It has been the undersigned's experience that litigating whether fees and expenses are warranted, and if so,

---

[27] *In re Grand Jury Subpoenas*, 144 F.R.D. 653, 658 (10th Cir. 1998) (citing *United States v. Int'l Bd. of Teamsters*, 119 F.3d 210, 215 (2d Cir. 1997); *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120, 124 (3d Cir. 1986)).

[28] *See* Fed. R. Civ. P. 37(a)(5)(B).

7

the appropriate amount, often results in the parties expending as much time and resources as they

did litigating the underlying discovery motion. For this reason, the court orders the parties to

confer within seven (7) calendar days from the date of this order to attempt to reach an

agreement regarding the issue of reasonable fees and expenses incurred as a result of this motion

and the two other motions to compel (ECF Nos. 149 and 166). If the parties cannot come to an

agreement, plaintiff shall show cause in writing to the undersigned within (14) calendar days

from the date of this order why he should not be taxed with defendant's reasonable fees and

expenses incurred in opposing this motion. By the same date, plaintiff shall also file a verified

accounting of his own fees and expenses incurred as a result of filing his previous two motions to

compel, if the parties are unable to resolve this issue among themselves. The court had

previously stayed this deadline pending a ruling on this motion to compel.[29]

Accordingly,

**IT IS THEREFORE ORDERED** that upon plaintiff's Motion to Compel Regarding

Defendants' Privilege Log (ECF No. 226) is denied.

**IT IS SO ORDERED.**

Dated this 18th day of July, 2016, at Topeka, Kansas.


s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge

---

[29] *See* Order, ECF No. 239.