**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **CURTIS KLAASSEN, Ph.D.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 13-CV-2561-DDC-KGS** |
| **UNIVERSITY OF KANSAS**<br>**SCHOOL OF MEDICINE, ET AL.,** | |
| **Defendants.** | |

**MEMORANDUM AND ORDER**

This matter comes before the court on plaintiff's "Motion for Review and Plaintiff's Objections to Magistrate Judge's Ruling" (Doc. 251).  The motion seeks review of and objects to an Order (Doc. 244) issued by Magistrate Judge K. Gary Sebelius denying plaintiff's Motion to Compel defendants to produce certain documents identified on defendants' privilege log.  For the reasons explained below, the court overrules plaintiff's objections and affirms Judge Sebelius' decision that the documents are attorney-client privileged and thus not discoverable.

## I.      Factual and Procedural Background

Plaintiff served as a tenured professor at the University of Kansas Medical Center ("KUMC") until KUMC fired him in 2014.  Plaintiff brings this lawsuit against KUMC and various current and former KUMC officials.  He alleges that defendants retaliated against him after he criticized KUMC for financial mismanagement, misuse of grant funds, and other misconduct.  Plaintiff asserts First Amendment retaliation claims, due process claims, and various claims under Kansas state law.

In 2012, KUMC charged plaintiff with professional and personal misconduct.  Consistent with KUMC's Handbook for Faculty and Other Unclassified Staff, an ad hoc committee scheduled a meeting on May 29, 2012, to consider the complaint lodged against plaintiff.  On May 25, 2012, plaintiff filed a lawsuit in our court seeking an order restraining the hearing from occurring.  Complaint & Motion for Temporary Restraining Order and Preliminary Injunction, *Klaassen v. Kan. Bd. of Regents*, No. 12-2326-JTM-JPO (D. Kan. May 25, 2012), ECF Nos. 1, 3.  Sara Trower, a former Assistant General Counsel for the University of Kansas,[1] was counsel of record and represented KUMC in that case.  Transcript, *Klaassen v. Kan. Bd. of Regents*, No. 12-2326-JTM-JPO (D. Kan. Nov. 7, 2013), ECF No. 10 at 1.  The court denied plaintiff's Motion for Temporary Restraining Order and dismissed the Complaint for lack of subject matter jurisdiction.  Order, *Klaassen v. Kan. Bd. of Regents*, No. 12-2326-JTM-JPO (D. Kan. May 29, 2012), ECF No. 7.

The ad hoc committee hearing was held as scheduled on May 29, 2012.  The hearing committee consisted of five of plaintiff's faculty peers, one of whom plaintiff selected.  Ms. Trower served as the prosecutor at the hearing, presenting evidence on behalf of KUMC.  Plaintiff was represented by counsel and testified at the hearing.  After hearing the evidence presented, the ad hoc committee concluded that plaintiff had committed misconduct and recommended that KUMC publicly censure plaintiff.  Ms. Trower did not represent the faculty ad hoc committee, and she was not involved in the committee's deliberations or recommendations.

---

[1]     In her position as Assistant General Counsel, Ms. Trower served as an in-house attorney for the University of Kansas and its various subordinate units, including KUMC.  As discussed in more detail below, Ms. Trower represented KUMC and other defendants in this lawsuit until filing her notice of withdrawal to take a position at another university.  Doc. 241.

The ad hoc committee's recommendations were provided to Dr. Steven Stites, KUMC's Acting Executive Vice Chancellor.  Dr. Stites had not participated in the hearing or the ad hoc committee's deliberations.  After reviewing the ad hoc committee's recommendations, Dr. Stites adopted the committee's recommendation to censure plaintiff.  He also asked plaintiff to submit a written apology to the KUMC community.   Dr. Stites communicated his decision to plaintiff in a written letter dated June 13, 2012.

In 2013, KUMC again charged plaintiff with professional and personal misconduct. Plaintiff filed this lawsuit on October 31, 2013.  Doc. 1.  Ms. Trower entered her appearance on behalf of KUMC on November 1, 2013.  Doc. 4.  On November 13, 2013, an ad hoc committee held a hearing to consider the second charges of misconduct lodged against plaintiff.  Ms. Trower served as the prosecutor at the hearing, presenting evidence on behalf of KUMC. Plaintiff was represented by counsel and presented evidence at the hearing.  After considering the evidence and arguments presented at the hearing, the ad hoc committee concluded that plaintiff had committed professional misconduct and recommended discipline in the form of a written warning.  Ms. Trower did not represent the ad hoc committee, and she was not involved in the ad hoc committee's deliberations.

The committee's recommendation was provided to Dr. Douglas Girod, Executive Vice Chancellor.  Dr. Girod considered the recommendations, but ultimately decided to terminate plaintiff's employment.  He communicated that decision to plaintiff in a letter dated January 6, 2015.

In this lawsuit, plaintiff filed a Motion to Compel seeking communications between Ms. Trower and Dr. Stites after the May 29, 2012 hearing and communications between Ms. Trower and Dr. Girod after the November 13, 2013 hearing.  Defendants assert that these

communications are protected from disclosure under the attorney-client privilege. They have identified responsive communications on their privilege log. Plaintiffs contend that no attorney-client relationship existed because Kansas Rule of Professional Conduct 1.12 prohibited Ms. Trower from representing Dr. Stites and Dr. Girod, as the decision makers, when Ms. Trower served as the prosecutor during the ad hoc committee hearings.

On July 18, 2016, Judge Sebelius denied plaintiff's Motion to Compel. Doc. 244. He held that the communications are protected by the attorney-client privilege and thus not discoverable. Judge Sebelius rejected plaintiff's argument that no privilege attached to the communications because Ms. Trower could not represent Dr. Stites or Dr. Girod when she served in a prosecutorial role at the ad hoc committee hearings. He concluded that the question whether Ms. Trower's representation of Dr. Stites and Dr. Girod violated due process or the Kansas Rules of Profession Conduct is a "separate inquir[y]" from whether the communications are privileged. *Id.* at 7. And, based on the record presented, Judge Sebelius found that the correspondence is privileged because it involves communications between an in-house lawyer and her clients (KUMC officials) made for the purpose of providing legal advice in response to a client's request for that advice.

Plaintiff objects to Judge Sebelius' ruling and argues that his decision denying plaintiff's Motion to Compel was clearly erroneous. The court addresses plaintiff's arguments below.

## II.     Standard of Review

Fed. R. Civ. P. 72(a) allows a party to provide specific, written objections to a magistrate judge's order. When reviewing a magistrate judge's order deciding nondispositive pretrial matters, the district court applies a "clearly erroneous or contrary to law" standard of review. *See First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil*

*Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461–62 (10th Cir. 1988)); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  Under the clearly erroneous standard, the district court does not conduct a de novo review of the factual findings; instead, it must affirm a magistrate judge's order unless a review of the entire evidence leaves it "with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp.*, 847 F.2d at 1464.  In contrast, "the contrary to law" standard permits the district court to conduct an independent review of purely legal determinations made by the magistrate judge. *Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan. 2007) (citations omitted).  A magistrate judge's order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Walker v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 09–1316–MLB, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011) (quotation omitted).

## III.    Analysis

Plaintiff asserts that Judge Sebelius erred by denying plaintiff's Motion to Compel because the documents at issue both are relevant and not protected by attorney-client privilege. The court disagrees.  After reviewing the record and Judge Sebelius' well-reasoned Order, the court concludes that his ruling that the attorney-client privilege protects the communications is not clearly erroneous or contrary to law.[2]

Where, as here, a plaintiff asserts federal claims and pendent state law claims, a court should consider both federal and state law when deciding questions involving the attorney-client privilege. *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1369 (10th Cir .1997).  But when "no real conflict between federal and Kansas law regarding the attorney-client privilege [exists] . . . whether the Court applies federal or Kansas law generally makes no difference in determining

---

[2]    Because the court concludes that the documents are protected by attorney-client privilege, the court need not address whether they are relevant to plaintiff's claims.

whether attorney-client privilege applies." *C.T. v. Liberal Sch. Dist. USD 480*, Nos. 06-2093-JWL, 06-2360-JWL, 06-2359-JWL, 2008 WL 217203, at *2 (D. Kan. Jan. 25, 2008) (quoting *Kan. Wastewater, Inc. v. Alliant Techsystems, Inc.*, 217 F.R.D. 525, 526 n.3 (D. Kan. 2003)). Because no conflict between federal and Kansas law exists here, the court examines the attorney-client privilege issue under federal law.

Federal common law recognizes that "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* (quoting *Upjohn*, 449 U.S. at 389).

The Tenth Circuit has explained that the attorney-client privilege applies to "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *Id.* (citations and internal quotation marks omitted). But "[t]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Id.* (quoting *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995)). Instead, the privilege protects only "communication between a lawyer and client [concerning] legal advice or strategy sought by the client." *Id.* (quoting *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998)).

The party asserting the attorney-client privilege bears the burden to establish that it applies. *Id.* at 1183. A court must construe the privilege strictly and accept it "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good

transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).

**A.  The Attorney-Client Privilege Applies.**

Plaintiff is not entitled to discover the requested communications because the attorney-client privilege protects them from disclosure.  Plaintiff seeks two types of communications that defendants have identified on their privilege log:  (1) communications between Ms. Trower and Dr. Stites after the May 29, 2012 hearing; and (2) communications between Ms. Trower and Dr. Girod after the November 13, 2013 hearing.  The court addresses each set of communications in turn.

**1.  Communications after the May 29, 2012 hearing**

The privilege log shows communications between Ms. Trower and Dr. Stites after the May 29, 2012 hearing.  The communications discuss preparing the letter that Dr. Stites eventually sent to plaintiff on June 13, 2012, advising plaintiff that Dr. Stites had decided to adopt the committee's recommendation to censure plaintiff and asking plaintiff to submit a written apology to the KUMC community.

Ms. Trower asserts by affidavit that Dr. Stites sought her legal advice, as a member of the general counsel's office, "to assist in effectuating his decision" about the appropriate discipline to impose on plaintiff.  Doc. 259-1 at 2.  Ms. Trower states that Dr. Stites sought her legal advice only "[a]fter Dr. Stites had made his decision about the appropriate discipline to impose based on the faculty ad hoc committee's finding and recommendations."  *Id.*  Ms. Trower considered Dr. Stites to have acted in his official capacity as the Acting Executive Vice Chancellor for KUMC when he requested her advice.  And, in response, Ms. Trower provided the requested legal advice and assisted Dr. Stites in communicating his decision to plaintiff.  Ms. Trower asserts that the

communications she had with Dr. Stites were confidential in nature and that KUMC has
maintained the communications as confidential at all times.  Ms. Trower is unaware of any
actions that may constitute a waiver of the privilege for these communications.

Under these facts, defendants have satisfied their burden to show that the attorney-client
privilege protects the communications at issue.  Dr. Stites, acting in his official capacity for
KUMC, is a client who sought legal advice from Ms. Trower, an in-house lawyer for KUMC.
*See* Kan. R. Prof'l Conduct 1.13(a) ("A lawyer employed or retained by an organization
represents the organization acting through its duly authorized constituents.").  Ms. Trower
provided that advice to her client in confidence and assisted him in "effectuating"[3] the discipline
decision.  The record includes no facts demonstrating that KUMC failed to maintain the
confidence or that it took any actions waiving the privilege.  The communications thus are
"confidential communications by a client to an attorney made in order to obtain legal assistance
from the attorney in [her] capacity as a legal advisor" and are protected by the attorney-client
privilege.  *In re Grand Jury Proceedings*, 616 F.3d at 1182.

Plaintiff asserts that the attorney-privilege does not apply to these communications if Ms.
Trower provided legal advice to Dr. Stites about how to decide the appropriate discipline to
impose on plaintiff when she also served in a prosecutorial role at the ad hoc committee hearing.
Plaintiff argues that Ms. Trower's actions violated due process and the Kansas Rules of

---

[3]     Plaintiff takes issue with the defendants' use of the word, "effectuate."  Plaintiff asserts that if
Ms. Trower merely acted as a scribe for Dr. Stites in writing the June 13, 2012 letter, then she did not
provide legal advice and no privilege attaches to the communications.  The court does not understand
defendants' description of Ms. Trower's actions in "effectuating" Dr. Stites' decision as acting merely as
a scribe.  Indeed, the privilege log shows multiple communications between Ms. Trower, Dr. Stites, and
other KUMC officials about "final" and "alternative" drafts of the letter.  Doc. 259-7 at 6–7.  This history
suggests that the participants communicated about the language used to convey the information in the
letter and did not merely accept a draft written by a scribe.  Moreover, defendants' privilege log describes
the communications as "seek[ing] advice of attorney" or "reflect[ing] advice of attorney."  *Id.*  Plaintiff
provides no reason to question the veracity of these descriptions.

Professional Conduct, and thus the attorney-client privilege cannot attach to these communications.  But plaintiff concedes that no legal authority exists to support his argument.  The court agrees with Judge Sebelius' conclusion—whether the attorney-client privilege applies to these communications and whether these communications amount to a violation of due process or the Kansas Rules of Professional Conduct are separate inquiries.  The court concludes that the first inquiry—whether the attorney-client privilege applies—is satisfied by defendants' showing that the communications were made in confidence between an attorney and client for the purpose of obtaining legal advice.  The court discusses the second inquiry below.  And, as explained in the next section, even if the due process clause or the Kansas Rules of Professional Conduct were violated, the remedy for such a violation does not include revoking the privilege for attorney-client protected communications.

Plaintiff also says it's "unfair" for the court to accept Ms. Trower at her word that she provided legal advice to Dr. Stites only after he made his discipline decision.  Plaintiff contends that the privilege log appears inconsistent with this assertion because the communications show the exchange of multiple drafts of the letter.  Plaintiff suggests that Ms. Trower may have advised Dr. Stites how to rule on the discipline decision and that Judge Sebelius should have conducted an *in camera* inspection of the documents to determine Ms. Trower's involvement in that decision.  The court disagrees.  The record contains nothing to cast doubt on Ms. Trower's sworn statement that she provided advice to Dr. Stites after he made his decision.  The court finds no valid reason for fishing around into defendants' privileged communications based only on pure speculation.

Defendants have demonstrated that these communications are protected by the attorney-client privilege.  Thus, Judge Sebelius' decision that the attorney-client privilege precludes disclosure of them is not clearly erroneous or contrary to law.

### 2.   Communications after the November 13, 2013 hearing

The privilege log also includes email communications between Dr. Girod, his assistant, and KUMC in-house counsel on January 3, 2014 about the "Monday Klaassen letter."  Doc. 259-7 at 3.  Ms. Trower was copied on these emails.  The privilege log states that each email seeks or reflects legal advice.  *Id.*  Defendants describe the emails as discussing "strategy as it relates to future communications related to an ongoing legal matter."  Doc. 259 at 14.  KUMC and its counsel included no third parties on the communications.  They have treated the communications as confidential and have taken no actions to waive the asserted privilege.

Under these facts, defendants have established that the communications are protected from disclosure by the attorney-client privilege.  The communications were made in confidence between officials of KUMC (the client) and members of the general counsel's office (the attorneys) for the purpose of obtaining legal advice.  The emails thus are "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his [or her] capacity as a legal advisor" and protected by the attorney-client privilege. *In re Grand Jury Proceedings*, 616 F.3d at 1182.

Plaintiff again argues that the attorney-client relationship does not protect these communications because Ms. Trower cannot provide legal advice to KUMC about the discipline decision when she served in a prosecutorial role at the ad hoc committee hearing.  Plaintiff thus asserts that defendants nullified the attorney-client privilege when Ms. Trower was copied on the January 3, 2014 emails because she is a third party not entitled to share in the privilege.  The

court disagrees.  For the same reasons described above, these two issues are distinct and involve separate inquiries.  For the attorney-client privilege inquiry, defendants have established that the communications are privileged and protected from disclosure.  And, for the reasons explained below, even if Ms. Trower served in a dual role that violated due process or the Kansas Rules of Professional Conduct, the consequence for such a violation is not revoking the attorney-client privilege for protected communications.

Moreover, defendants assert that the record shows that Ms. Trower did not advise Dr. Girod on the termination decision.  Indeed, Ms. Trower asserts by affidavit that she was not asked to advise Dr. Girod about how to rule when preparing the January 6, 2014 letter, and that she did not provide such advice.  Ms. Trower also states that she did not help Dr. Girod prepare the January 6, 2014 letter that advised plaintiff of his termination.  Also, the privilege log includes an entry on December 30, 2013 showing that the termination decision was made before the January 3, 2014 emails on which Ms. Trower was copied.  That privilege log entry is an email from Chari Young, an in-house lawyer for KUMC, to Dr. Girod that included as an attachment "Girod letter re Ad Hoc Committee and decision to terminate."  Doc. 259-7 at 2.  Ms. Trower was not copied on this communication.

On January 3, 2014, Ms. Trower was counsel of record in this case.  Defendants assert it was reasonable to include Ms. Trower on emails about the strategy for an ongoing legal matter in which she was counsel of record.  And defendants argue that the record lacks any evidence to suggest that the communications involve Ms. Trower providing advice about the termination decision, especially when the privilege log reflects that the decision was made several days before the January 3, 2014 emails.  The court agrees.  Plaintiff provides no basis for finding that the attorney-client privilege does not apply to these communications.  Judge Sebelius' decision

that the communications are protected from disclosure is not clearly erroneous or contrary to law.

### B. Kansas Rule of Professional Conduct 1.12 Does Not Provide a Basis to Revoke the Attorney-Client Privilege.

Plaintiff also asserts that Kansas Rule of Professional Conduct 1.12 prohibits Ms. Trower from providing legal advice to Dr. Stites and Dr. Girod because she served both as the prosecutor in the ad hoc committee meetings and legal counsel to the decision-makers. Put another way, plaintiff contends that Ms. Trower violated Rule 1.12, and this violation precludes an attorney-client relationship from forming. Plaintiff asserts that, because no attorney-client relationship existed, the attorney-client privilege cannot apply to the communications between Ms. Trower and Dr. Stites or between Ms. Trower and Dr. Girod.

Defendants disagree. They argue that a violation of Rule 1.12—even assuming one occurred—does not abrogate the attorney-client privilege. And, in any event, defendants assert that Rule 1.12 does not apply to the facts at issue here.

Before turning to the merits of this issue, the court considers whether defendants have waived the right to assert their argument about Rule 1.12. Plaintiff contends that defendants never responded to their Rule 1.12 argument when they opposed plaintiff's Motion to Compel before Judge Sebelius. And, plaintiff asserts, defendants cannot do so now because they have waived the issue. *See* D. Kan. Rule 7.4(b) (motion ordinarily granted when opposing party fails to respond).

After reviewing the parties' briefing on the Motion to Compel, the court concludes that defendants did not waive their Rule 1.12 argument. In his Motion to Compel, plaintiff focused his arguments on an alleged due process violation. *See* Doc. 227 at 6–8. Plaintiff contended that no attorney-client privilege can attach to the requested correspondence because courts have held

that a plaintiffs' due process rights are violated when an attorney acts as both as prosecutor and judicial advisor in the due process proceedings. *Id.* In a string cite, plaintiff cited Rule 1.12 along with several cases recognizing that due process requires a neutral and detached judge. *Id.* at 8. Importantly, plaintiff never argued in his initial motion that a violation of Rule 1.12 abrogates the attorney-client privilege.

In their response to the motion, defendants refuted plaintiff's due process argument, stating: "[Plaintiff] cites no legal authority for his argument regarding attorney-client privilege, but simply claims that the communications between Trower and Stites in 2012 violate due process and thus no attorney-client privilege can attach. This argument is fundamentally flawed." Doc. 229 at 7–8. Defendants went on to explain their reasoning for why, as they contended, plaintiff's due process argument was flawed. *Id.* at 8–10.

Plaintiff's Reply expanded on the Rule 1.12 argument, asserting that the rule prohibits an attorney from representing both an adjudicative officer and serving as a prosecutor in the underlying proceeding. Doc. 234 at 3–4. Plaintiff argued that defendants did not dispute the existence of that rule, which is correct. But defendants' response did dispute the argument that no attorney-client privilege attached to the communications because Ms. Trower served in a prosecutorial role at the ad hoc committee hearing, and defendants criticized plaintiff for offering no legal authority to support his novel theory that a due process violation prevents the attorney-client privilege from attaching to otherwise protected communications. Doc. 229 at 7–8. The court finds no waiver here.

Turning to the merits of the dispute, the court concludes that Judge Sebelius did not err by rejecting plaintiff's novel theory that no attorney-client privilege attaches to communications if the attorney violates Rule 1.12. The rule provides: "[A] lawyer shall not represent anyone in

connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person or as an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent confirmed in writing." Kan. R. Prof'l Conduct 1.12(a). This rule forbids an attorney from representing a client in a matter in which the attorney served as a judge or other adjudicative officer. But it says nothing about what happens to the attorney-client privilege if a violation of the rule occurs. As defendants correctly state, "nothing in the Rule, in case law, or in common sense suggests that a violation of Rule 1.12 constitutes a waiver of the attorney-client privilege." Doc. 259 at 15.

Indeed, plaintiff concedes that Judge Sebelius' ruling "address[ed] an issue of first impression." Doc. 252 at 12. Since it is a matter of first impression, the court fails to understand how Judge Sebelius' ruling was clearly erroneous or contrary to law. No legal authority exists to refute Judge Sebelius' sound reasoning for denying plaintiff's motion. And the court is not persuaded that plaintiff's novel legal theories require reversal of Judge Sebelius' decision.

Plaintiff asserts that no attorney-client relationship is formed if the attorney violates Rule 1.12, and without an attorney-client relationship, no attorney-client privilege can attach to the communications. The court disagrees. As defendants explain, a violation of the ethical rules may disqualify counsel, but disqualification is not automatic. *See*, *e.g.*, *Archuleta v. Turley*, 904 F. Supp. 2d 1185, 1192 (D. Utah 2012) (after concluding that attorney violated Utah Rule of Prof'l Conduct 1.12 (which is identical to Kan. Rule of Prof'l Conduct 1.12), the court considered whether disqualification was warranted because "[e]ven when an ethical violation occurs, disqualification is not automatic. Rather, disqualification depends on whether the case is tainted by the ethical violation." (citations omitted)); *Layne Christensen Co. v. Purolite Co.*, No. 09-2381-JWL-GLR, 2011 WL 1113543, at *5 (D. Kan. Mar. 24, 2011) (explaining that

14

violations of the Kansas Rules of Professional Conduct "do not automatically trigger disqualification," instead, "disqualification is appropriate only where the offending attorney's conduct threatens to taint the underlying trial with serious ethical violations" (citations and internal quotation marks omitted)); *Barragree v. Tri-County Elec. Co-op, Inc.*, 950 P.2d 1351, 1359 (Kan. 1997) (explaining that, even if an attorney formed an attorney-client relationship that created a conflict of interest thus violating an ethical rule, disqualification of counsel is not automatic; instead, the court should consider a variety of factors before ordering disqualification such as (1) the nature of the ethical violation; (2) prejudice to the parties; (3) the effectiveness of counsel in light of the violations; (4) the public's perception of the profession; and (5) whether the motion to disqualify was used as a tactical device or as a means of harassment).

So, even when a violation occurs, this doesn't mean that an attorney-client relationship never was formed.  To the contrary, a relationship was formed.  That relationship may end if the attorney is disqualified, or it may not since disqualification is not automatic.  But, in either case, nothing vitiates the attorney-client privilege protecting communications made during representation.  A violation of the ethical rules also may lead to a disciplinary action against the attorney, but the court has found no authority suggesting that the discipline imposed in such a proceeding could include waiver of the attorney-client privilege.

Nor would such a result promote the policy rationales that inhere in the attorney-client privilege, *i.e.* encouraging full and frank communication between attorneys and their clients.  *See In re Grand Jury Proceedings*, 616 F.3d at 1182.  To the contrary, defendants suggest several reasons why abrogating the attorney-client privilege based on an attorney's ethical rule violation would harm the public and the legal system.  Such a rule would injure the client by removing the privilege from otherwise protected communications even though it was the attorney—and not the

15

client—who committed the rule violation.  It also could encourage litigation seeking disqualification of counsel in an effort to obtain privileged communications.  The court agrees with defendants:  The rule that plaintiff urges the court to adopt would undermine attorney-client communications and hinder attorneys' ability to serve their clients.

For all these reasons, the court concludes that Judge Sebelius' ruling was not clearly erroneous or contrary to law.  The communications at issue are attorney-client privileged and thus protected from disclosure.  Judge Sebelius did not err in denying plaintiff's Motion to Compel production of these protected communications.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's "Motion for Review and Plaintiff's Objections to Magistrate Judge's Ruling" (Doc. 251) is denied and plaintiff's objections to the Order of the Magistrate Judge (Doc. 244) are overruled.

**IT IS SO ORDERED.**

**Dated this 21st day of October, 2016, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
