IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **CURTIS KLAASSEN, Ph.D.,**<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**UNIVERSITY OF KANSAS**<br>**SCHOOL OF MEDICINE, ET AL.,**<br><br>　　　　**Defendants.** | Case No. 13-CV-2561-DDC-KGS |

**MEMORANDUM AND ORDER**

This matter comes before the court on plaintiff's Motion for Leave to File Third Amended and Supplemental Complaint. Doc. 266. Plaintiff seeks leave to supplement his Complaint to include allegations that, he contends, occurred after he filed his Third Amended Complaint. He also requests leave to amend the Pretrial Order to include these allegations. *Id.* at 1. Defendants oppose plaintiff's motion. Defendants assert that plaintiff cannot satisfy the standard for supplementing his pleading or amending the Pretrial Order. Defendants also contend that the court should deny leave to amend because of plaintiff's undue delay in bringing the motion, the undue prejudice that would result to defendants, plaintiff's bad faith in asserting the additional allegations, and the futility of amendment.

After considering the parties' arguments, the court grants plaintiff's motion in part and denies it in part, for reasons explained below. The court also orders plaintiff to file his Third Amended and Supplemental Complaint, consistent with this Order, within 10 days of the filing of this Order.

## I.      Factual and Procedural Background

Plaintiff served as a tenured professor at the University of Kansas Medical Center

("KUMC") until KUMC fired him in 2014.  Plaintiff brings this lawsuit against KUMC and

various current and former KUMC officials.  He alleges that defendants retaliated against him

after he criticized KUMC for financial mismanagement, misuse of grant funds, and other

misconduct.  Plaintiff asserts First Amendment retaliation claims, due process claims, and

various claims under Kansas state law.

In 2012, KUMC charged plaintiff with professional and personal misconduct.  On May

29, 2012, an ad hoc committee—consisting of five of plaintiff's faculty peers (one of whom

plaintiff had selected)—held a meeting to consider the complaint lodged against plaintiff.  After

hearing the evidence presented, the ad hoc committee concluded that plaintiff had committed

misconduct and recommended that KUMC publicly censure him.  Dr. Steven Stites, KUMC's

Acting Executive Vice Chancellor, adopted the committee's recommendation to censure

plaintiff, and he communicated his decision to plaintiff in a written letter dated June 13, 2012.

In 2013, KUMC again charged plaintiff with professional and personal misconduct.  On

November 13, 2013, an ad hoc committee held a hearing to consider this second set of

misconduct charges.  After the hearing's conclusion, the ad hoc committee determined that

plaintiff had committed professional misconduct and recommended discipline in the form of a

written warning.  Dr. Douglas Girod, Executive Vice Chancellor, considered the committee's

recommendations, but ultimately, he decided to terminate plaintiff's employment instead of

issuing a written warning.  He communicated that decision to plaintiff in a letter dated January 6,

2014.

Plaintiff appealed the termination decision, and an ad hoc hearing committee held a hearing on the appeal in November 2014.  The committee recommended that the termination decision stand.  Dr. Girod sent plaintiff a letter on December 23, 2014, stating that he agreed with the committee's recommendation and advising plaintiff that the letter served as notice of final agency action.

Plaintiff appealed his termination under the Kansas Judicial Review Act by filing a lawsuit in the District Court of Wyandotte County, Kansas.  In September 2015, Judge Daniel Duncan of that court held that KUMC's termination had violated plaintiff's due process rights and remanded the matter to KUMC for further hearing with additional notice and opportunity to be heard.  Doc. 137-2.

Consistent with this order, KUMC held another hearing in March 2016.  The committee again recommended that the termination decision stand.  On May 9, 2016, University of Kansas Chancellor Bernadette Gray-Little sent plaintiff a letter, adopting the committee's recommendation, affirming plaintiff's termination, and serving as notice of final agency action ("Final Agency Action Notice Letter").

Plaintiff filed this lawsuit on October 31, 2013.  He has amended his Complaint three times since, the latest amendment occurring on May 22, 2015.  Doc. 121 (Third Amended Complaint).  When plaintiff received Chancellor Gray-Little's Final Agency Action Notice Letter in May 2016, discovery already had closed about six weeks earlier, on March 31, 2016. *See* Doc. 125-1 at 2, 4.  Nevertheless, plaintiff sought to depose Chancellor Gray-Little to determine whether she was a decision-maker in the termination and, if so, whether an evidentiary basis existed for the termination decision.  After a meet and confer process, defendants agreed to produce Chancellor Gray-Little for deposition on July 27, 2016.  Plaintiff asserts that he learned

for the first time during Chancellor Gray-Little's deposition that KUMC's purpose for convening the March 2016 rehearing was to comply with Judge Duncan's remand order and that the proceeding was limited in scope because, as Chancellor Gray-Little understood, Judge Duncan's order provided for no de novo proceeding. Plaintiff also asserts that he first learned during Chancellor Gray-Little's deposition that she never had participated in a termination of a tenured KUMC faculty member before his, that she acknowledged that her actions were inconsistent with the KUMC Handbook for Faculty and Staff which makes the KUMC Executive Vice Chancellor responsible for final agency action notice, and that another letter from Dr. Girod dated October 21, 2015, was a termination letter that intended to clarify Dr. Girod's previous termination letter of January 6, 2014.

Also after the close of discovery, defendants produced about 90,000 pages of documents responsive to plaintiff's First and Second Requests for Production. Plaintiff had served his First Request for Production on August 25, 2015, and his Second Request for Production on November 6, 2015. *See* Docs. 127, 264. Defendants propounded objections and responses to the discovery requests. The parties disputed whether some of defendants' objections were proper, and plaintiff filed several motions to compel seeking production of responsive documents. On June 2, 2016, Judge Sebelius granted in part and denied in part plaintiff's Second Motion to Compel. Doc. 230. Judge Sebelius ordered defendants to produce certain documents and allowed plaintiff to re-open Dr. Girod's deposition to question him about similarly situated KUMC faculty members. Defendants produced more responsive documents on June 23, 2016 and July 26, 2016. *See* Docs. 23, 248.

Plaintiff deposed Dr. Girod a second time on July 28, 2016. Plaintiff asserts that he first learned during Dr. Girod's second deposition that KUMC treated plaintiff differently than other

4

KUMC department chairs who were demoted or suspended. Plaintiff represents that he received copies of Chancellor Gray-Little and Dr. Girod's deposition transcripts on August 4, 2016.

On August 10, 2016, the parties submitted a proposed Pretrial Order. Plaintiff sought to include facts in the proposed Pretrial Order that occurred, he asserts, after plaintiff filed his Third Amended Complaint. Defendants objected to including these facts because plaintiff had not pleaded them. The proposed Pretrial Order also noted plaintiff's request for leave to amend his complaint to assert these new facts.

Judge Sebelius convened the Final Pretrial Conference on August 17, 2016. During the conference, defendants again objected to plaintiff's reliance on facts that occurred after the filing of the Third Amended Complaint. Judge Sebelius ordered the parties to make certain changes to the proposed Pretrial Order. They included removing plaintiff's allegations about events occurring after filing the Third Amended Complaint. Doc. 263 at 2. He directed the parties to submit the revised proposed Pretrial Order with the court by August 22, 2016. *Id.* The parties did so, and the court entered the Final Pretrial Order on August 25, 2016. Doc. 268.

After the Final Pretrial Conference, Judge Sebelius also ordered plaintiff to file a motion for leave to amend the Pretrial Order on or before August 24, 2016. *Id.* Plaintiff filed such a motion (Doc. 266), and the court considers this motion below.

**II.     Legal Standard**

Defendants assert that plaintiff must satisfy the standard under Fed. R. Civ. P. 16 to obtain leave to amend. Although plaintiff seeks to supplement his Complaint under Fed. R. Civ. P. 15(d), defendants argue that the motion is governed by Rule 16 because the Pretrial Order now controls the action and supersedes the pleadings. *See Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1267 (10th Cir. 2007) ("The subsequent pretrial order supercedes the pleadings." (citing

5

*Wilson v. Muckala*, 303 F.3d 1207, 1216 (10th Cir. 2002))).  Indeed, Rule 16(d) states that the Pretrial Order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d).  And, Rule 16(e) provides that "[t]he court may modify the order issued after a final pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16(e); *see also* D. Kan. Rule 16.2 ("The pretrial order . . . will control the subsequent course of the action unless modified by consent of the parties and court, or by an order of the court to prevent manifest injustice.").  But, although a "pretrial order defines a lawsuit's boundaries . . . , total inflexibility is undesirable." *103 Investors I, L.P. v. Square D Co.*, 372 F.3d 1213, 1217 (10th Cir. 2004) (quoting *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997)).

Defendants argue that Rule 16 applies because the court already has entered the Pretrial Order, and, thus, plaintiff must demonstrate that manifest justice will ensue if the court denies leave to amend.  The court disagrees.  Although the court has entered the Pretrial Order, plaintiff raised his request for leave to amend well before the Order was filed.  Plaintiff included his request for leave to amend his complaint in the proposed Pretrial Order submitted by the parties on August 10, 2016.  He again raised this issue at the Final Pretrial Conference on August 17, 2016.  In response, Judge Sebelius ordered plaintiff to file a motion for leave to amend.  Judge Sebelius also ordered the parties to submit a revised Pretrial Order.  Plaintiff filed his motion on August 24, 2016.  Doc. 266.  One day later, Judge Sebelius entered the Pretrial Order.  Doc. 268.

Given this procedural history, the court declines to apply the "manifest injustice" standard that Rule 16 requires.[1]  Plaintiff asserted his request for leave to supplement his

---

[1] Even if the court applied the manifest injustice standard, the court likely still would grant the motion.  An amendment to the Pretrial Order is proper if the moving party shows that "the facts on which it bases its motion did not exist or could not be synthesized before" the pretrial order deadline by the exercise of diligence.  *Masek Distrib., Inc. v. First State Bank & Tr. Co.*, 908 F. Supp. 856, 858 (D. Kan. 1995).  As explained in this Order, plaintiff discovered the newly asserted facts shortly before the pretrial conference, and nothing suggests that plaintiff failed to exercise diligence to acquire them earlier.  To the

Complaint before the court entered the Pretrial Order, rendering Rule 16 inapplicable.  Also, it simply is unfair to apply the manifest injustice standard when plaintiff tried to include his supplemental allegations in the Pretrial Order.  Defendants objected, so the court set a schedule for plaintiff to file a motion to amend and for the parties to submit a revised Pretrial Order.  Plaintiff has complied with those orders, and the court declines to impose a heightened standard when plaintiff simply has complied with what the court asked him to do.

The court agrees with plaintiff that the procedural posture of this case resembles *Kendall State Bank v. Archway Insurance Services, LLC*, Nos. 10-CV-2617-KHV-DJW, 11-CV-KHV-DJW, 2012 WL 5907388 (D. Kan. Nov. 26, 2012).  In that case, defendants learned additional facts in discovery just 12 days before the parties' deadline to submit the proposed pretrial order.  *Id.* at *1.  One defendant included the newly discovered facts in the proposed pretrial order to support its counterclaim, and plaintiffs objected.  *Id.*  Judge Waxse advised the parties that he was inclined to exclude the new facts from the pretrial order, and, in response, the defendant filed a motion for leave to amend its counterclaim.  *Id.*  Judge Waxse recognized that, under Rule 16(c)(2)(B), "the pretrial conference is an appropriate time to amend the pleadings," and thus the defendant's request was not untimely.  *Id.* at *2.  When considering whether to grant leave, Judge Waxse applied Rule 15 and concluded under its "liberal standards" that leave was warranted because defendant learned of the new facts shortly before the pretrial conference and granting leave served the interests of justice.  *Id.* at *4.

Similarly, here, plaintiff discovered new facts just days before submitting the proposed pretrial order.  He attempted to assert the new facts in the proposed pretrial order and requested leave to amend his pleadings at the Final Pretrial Conference.  So, as Judge Waxse did in

---

contrary, plaintiff learned these facts only after defendants produced more documents and witnesses for deposition.  And, he attempted to include these facts in the proposed Pretrial Order submitted to Judge Sebelius.

7

*Kendall State Bank*, the court applies Rule 15 to plaintiff's Motion for Leave to File a Supplemental Complaint.

Rule 15(d) provides:  "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  The court has "broad discretion" to allow a party to serve a supplemental pleading.  *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001) (citing *Gillihan v. Shillinger*, 872 F.2d 935, 941 (10th Cir. 1989)); *see also All W. Pet Supply Co. v. Hill's Pet Prods. Div., Colgate-Palmolive Co.*, 152 F.R.D. 202, 204 (D. Kan. 1993).  The Tenth Circuit has instructed trial courts to "liberally grant[ ]" motions for leave to supplement "unless good reason exists for denying leave, such as prejudice to the defendants."  *Walker*, 240 F.3d at 1278 (quoting *Gillihan*, 872 F.2d at 941).  But, "[e]ven so, such notions 'are addressed to the sound discretion of the trial court.'"  *Id.* (quoting *Gillihan*, 872 F.2d at 941).

Our court applies the same standard for deciding motions for leave to amend under Rule 15(a) when considering whether to grant leave to supplement under Rule 15(d).  *First Savings Bank, F.S.B. v. U.S. Bancorp*, 184 F.R.D. 363, 368 (D. Kan. 1998).  Rule 15(a) provides that "[t]he court should freely give leave [to amend the pleadings] when justice so requires."  But the court may deny leave to amend on the grounds of undue delay, bad faith or dilatory motive by the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility of the proposed amendment.  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Like Rule 15(d), the court also has discretion to grant leave to amend the pleadings under Rule 15(a).  *Id.* (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).  As our court has explained, "[t]his discretionary approach of the federal rules fosters a full

adjudication of the merits of the parties' disputes within a single comprehensive proceeding." *First Savings Bank*, 184 F.R.D. at 368 (quoting *Katzman v. Sessions*, 156 F.R.D. 35, 38 (E.D.N.Y. 1994)). "Indeed, '[t]he purpose of [Rule 15(d)] is to promote as complete an adjudication of the dispute between the parties as is possible.'" *Id.* (quoting *LaSalvia v. United Dairymen of Ariz.*, 804 F.2d 1113, 1119 (9th Cir. 1986)).

### III.  Analysis

Plaintiff seeks to file a Third Amended and Supplemental Complaint. Plaintiff's proposed pleading adds factual allegations about another KUMC faculty member accused of misconduct (Doc. 266-1 ¶¶ 73–75), the time plaintiff requested and received to present his defense at the May 29, 2012 hearing (*id.* ¶¶ 81, 99), and plaintiff's appeal of the termination decision that ultimately culminated with Chancellor Gray-Little sending the Final Agency Action Notice Letter on May 9, 2016, affirming the termination decision (*id.* ¶¶ 104–117). Plaintiff contends these facts either occurred or plaintiff learned of them after he filed the operative complaint—the Third Amended Complaint—on May 22, 2015.

Also, plaintiff seeks to add factual allegations as support for three of his existing claims. He seeks to supplement Count 2 ("Procedural Due Process Taking of NIH grants") by including allegations about the treatment of other KUMC faculty members—facts he says he learned for the first time during Dr. Girod's second deposition on July 28, 2016. Plaintiff's proposed pleading also seeks to supplement Counts 3 and 4, which assert procedural and substantive due process violations based on the proceedings that led to his termination. Plaintiff seeks to add facts about these proceedings that, he contends, he first learned during Chancellor Gray-Little's deposition on July 27, 2016. Plaintiff also seeks to supplement Count 7 ("Tortious Interference with Contract") to include additional facts about Dr. Steven Stites' alleged motivations for

9

committing a tortious interference with a contract.  Plaintiff does not assert when he learned the additional facts he seeks to include in Count 7.

Defendants say the court should deny plaintiff's motion for leave for several reasons. First, defendants assert that the new facts that plaintiff seeks to add occurred before May 22, 2015—when plaintiff filed his most recent Complaint, and thus are not proper supplements under Rule 15(d).  Second, defendants accuse plaintiff of attempting to revive dismissed claims with his supplementation.  Third, defendants argue that plaintiff delayed bringing the motion, and so, the court should deny him leave to supplement.  Fourth, defendants contend that granting the motion will prejudice defendants unduly.  Fifth, defendants argue that plaintiff's request for leave is made in bad faith.  And, finally, defendants assert that plaintiff's proposed supplementation is futile.  The court addresses each argument, in turn, below.

### A. Are the new facts that plaintiff seeks to assert proper supplemental allegations?

Defendants assert that many of plaintiff's additional factual allegations are not proper supplementation under Rule 15(d) because they occurred before plaintiff filed his most recent Complaint on May 22, 2015, and motions to supplement apply only to allegations "that happened *after* the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). Plaintiff concedes that some of the facts occurred before May 22, 2015, but, he contends, he did not discover them until July 2016, well after he filed the most recent Complaint and shortly before the Final Pretrial Conference.

To the extent that some of the new allegations occurred before plaintiff filed his most recent Complaint, the court can construe plaintiff's request as a motion for leave to amend instead of a motion for leave to supplement. *See Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, Nos. 08-1330-EFM-GEB, 12-1215-EFM-GEB, 2016 WL 742879, at *5 (D.

10

Kan. Feb. 24, 2016) (construing a motion to supplement as a motion to amend). Indeed, the standards for deciding whether to grant leave to amend or leave to supplement are the same. *Id.* And, as one court has recognized, the distinctions between motions to amend under Rule 15(a) and motions to supplement under Rule 15(d) "are often confused in practice" and "the distinction is in most instances of little moment." *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002). The court will not preclude plaintiff from filing his supplemental pleading simply because some of the events occurred before he filed his most recent Complaint and at a time when plaintiff was not aware of them. Instead, the court only examines whether plaintiff can satisfy the identical Rule 15(a) and Rule 15(d) standards for obtaining leave to amend.

### B. Plaintiff's new allegations do not revive dismissed claims.

Plaintiff seeks to add factual allegations to Counts 3 and 4. These two counts assert procedural and substantive due process claims based on plaintiff's termination. The court previously determined that plaintiff has stated a claim for such due process violations. *Klaassen v. Univ. of Kan. Sch. of Med.*, 84 F. Supp. 3d 1228, 1247, 1254–55, 1259, 1265 (D. Kan. 2015). Defendants argue, however, that the new allegations are plaintiff's attempt to revive due process claims based on the May 29, 2012 hearing—claims that the court previously dismissed because it concluded that plaintiff was not deprived of any property interest at that hearing. *Id.* at 1255–56.

The court disagrees with defendants' characterization of these new allegations. Plaintiff is not trying to revive claims. In his most recent pleading, plaintiff based Counts 3 and 4 on his termination. His proposed pleading continues to rely on his termination as the basis for these alleged due process claims. Plaintiff's proposed supplemental pleading simply seeks to include, as support for those claims, new facts that plaintiff discovered since he filed his Third Amended Complaint on May 22, 2015.

11

On October 20, 2015, Dr. Girod sent plaintiff a letter providing "clarification" about the termination decision. Doc. 150-4 at 3. This letter referenced the May 29, 2012 hearing, stating that plaintiff's conduct "was also the subject of a prior Ad Hoc Committee Hearing with findings of personal and professional misconduct issued on May 31, 2012." *Id.* It noted, "Dr. Stites submitted a decision on June 13, 2012." *Id.* And, Dr. Girod explained that in reaching the termination decision, he "considered the December 8, 2013, recommendation in light of the 2012 Committee's findings and Dr. Stites' 2012 decision." *Id.* Dr. Girod sent this letter after the Wyandotte County District Court had remanded the matter to KUMC for an additional hearing.

Plaintiff also seeks to add allegations to Counts 3 and 4 about KUMC's actions after the Wyandotte County District Court's remand—actions that culminated with Chancellor Gray-Little's Final Agency Action Notice Letter of May 9, 2016, affirming the termination decision. Plaintiff learned all these facts after he filed his most recent Complaint. And, as the court determines below, he has not delayed in raising them.

Plaintiff also is not attempting to revive dismissed claims. Counts 3 and 4 always have alleged violations of due process based on his termination. These alleged violations deprived him of a property interest in continued employment. The new facts plaintiff seeks to assert expand on these alleged violations and they constitute proper supplementation.[2]

### C. Plaintiff has not delayed in bringing this motion.

Defendants next assert that plaintiff has delayed in bringing this motion. Defendants contend that plaintiff could have asserted facts that occurred both before and after the most

---

[2]   Defendants assert that the filing of a supplemented pleading will delay the case because defendants again will have an opportunity to file Rule 12 motions. The court is unable to discern the basis for filing a Rule 12 motion at this stage in the case. As noted, the court already has ruled that plaintiff has stated claims for due process violations based on his termination. The court also has ruled that plaintiff cannot state a separate due process claim based on the May 29, 2012 hearing. Plaintiff asserts no such claim in his proposed supplemental pleading. He only adds facts to support the viable claims he already has pleaded for alleged due process violations based on his termination.

12

recent Complaint sooner than he raised them during the Final Pretrial Conference. The court addresses each of the new allegations specifically, below.

First, plaintiff seeks to include allegations about other KUMC faculty comparators to support his procedural due process claim in Count 2. Defendants argue that these allegations are not proper supplementation because plaintiff neither identifies the date when these events occurred nor contends that they transpired after he filed the most recent Complaint. As explained above, the court finds this distinction irrelevant. Nevertheless, plaintiff responds that he does not know the exact dates of some of these events because defendants did not provide them in discovery, despite plaintiff's requests. But, importantly, plaintiff explains that he did not learn these facts until Dr. Girod's re-opened deposition on July 27, 2016. Plaintiff attempted to include these facts in the proposed pretrial order and sought leave to amend his pleading when the parties submitted the proposed pretrial order to the court shortly thereafter on August 10, 2016. Plaintiff did not delay asserting these new factual allegations.

Second, plaintiff seeks to add allegations to Counts 3 and 4. As explained above, these two counts allege procedural and substantive due process violations based on plaintiff's termination. Defendants assert that plaintiff could have raised these allegations earlier, for example, when he received Dr. Girod's "clarification" letter of October 20, 2015, or after Chancellor Gray-Little sent the Final Agency Action Notice Letter on May 9, 2016. But, as plaintiff explains, none of these events transpired in isolation. Instead, several events led to Chancellor Gray-Little's decision affirming the employment termination decision. Afterward, plaintiff sought discovery on these matters through Dr. Girod and Chancellor Gray-Little's depositions on July 27 and 28, 2016. These events occurred shortly before the parties submitted the proposed pretrial order, and plaintiff sought to include the newly discovered facts in that

13

submission.  Plaintiff also raised the issue of including the new facts at the Final Pretrial Conference.  Plaintiff has not delayed.

Finally, plaintiff seeks to add allegations to Count 7 ("Tortious Interference With a Contract) about Dr. Stites' personal motivations for committing certain alleged acts in 2012 and 2013.  Plaintiff does not explain when he learned these facts or why he could not have asserted them earlier.  Without an adequate explanation for the delay, plaintiff is not entitled to leave to amend with these allegations.  *See Minter*, 451 F.3d at 1205 (explaining that "denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay'" (quoting *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993)).  The court thus denies plaintiff's request for leave to include the additional allegations in Count 7 of his proposed supplemental pleading.  But, the court grants plaintiff leave to file his proposed supplemental pleading in all other respects.

### D. Allowing plaintiff leave to file a supplemental pleading will not result in undue prejudice to defendants.

Defendants also argue that the court should deny plaintiff leave to file his proposed supplemental pleading because, if the court grants the relief plaintiff seeks, defendants will sustain undue prejudice.  Defendants assert that the filing of a new complaint will require defendants to respond by Answer or dispositive motion to the new allegations.  But, as explained above, plaintiff's new allegations do not assert any new claims.  Instead, plaintiff just seeks to assert additional facts to support his existing claims—claims that the court already has ruled to state legally viable claims for relief.

Plaintiff's proposed pleading adds a handful of new facts that plaintiff discovered shortly before the case reached the Final Pretrial Conference.  Plaintiff states that he already has undertaken all discovery of these facts, and he does not intend to pursue anymore.  The court

14

recognizes that granting plaintiff's motion for leave will require defendant to respond to the new allegations. But there simply aren't that many of them. Thus, the effort involved in drafting and filing a new Answer—particularly in a case as expansive as this one—does not amount to undue prejudice to defendants.

The court also recognizes that plaintiff's new pleading will add further delay to this case—one that has been pending for over three years. But both sides have contributed to various delays in the case. The additional delay that the filing of a new complaint will impose here is slight, and it will not prejudice the defense of this lawsuit. Indeed, as our court has recognized, leave to amend a complaint is appropriate "[h]owever unfortunate the procedural posture and age of the case[ ] might be" if the proposed amendments seek to enhance the allegations of an already existing claim and "do not introduce an entirely new and different claim or substantially different issue." *Wallace B. Roderick Revocable Living Tr.*, 2016 WL 742879, at *6 (citation and internal quotation marks omitted). This is the case here.

### E. Plaintiff has not acted in bad faith.

Defendants also assert that the court should deny plaintiff's request for leave because he has acted in bad faith. Defendants premise their argument on the contention that plaintiff is attempting to revive dismissed claims with his new pleading. The court already has rejected this argument. The court finds no bad faith.

### F. The proposed supplemental allegations are not futile.

Finally, defendants assert that plaintiff's proposed supplemental allegations are futile. Defendants argue that plaintiff's additional factual allegations about the Wyandotte County District Court proceedings are an improper collateral attack on state court proceedings and barred by the *Younger* abstention doctrine. The court disagrees.

15

The *Younger* abstention doctrine reflects "longstanding public policy against federal court interference with state court proceedings." *Younger v. Harris*, 401 U.S. 37, 43 (1971). This doctrine holds, for reasons of state sovereignty and comity in state-federal relations, that federal courts should not enjoin state judicial proceedings. *Id.* at 44. *Younger* abstention is required when:  (1) there is an ongoing state judicial proceeding involving the federal plaintiff; (2) that implicates important state interests; and (3) the proceeding provides an adequate opportunity for the federal plaintiff to assert his or her federal claims. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The Supreme Court has limited *Younger*'s application in civil proceedings to three "exceptional circumstances" that prohibit federal intrusion into the following types of state court proceedings:  (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings akin to criminal prosecutions; and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Comm'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013). None of the three presents itself here.

Plaintiff's state court case is an appeal of his termination under the Kansas Judicial Review Act. It is not a criminal prosecution, nor is it a civil enforcement proceeding akin to one. Plaintiff's civil proceeding in state court also does not involve certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions. True, Judge Duncan has issued certain orders in the state court case, but plaintiff's new factual allegations do not collaterally attack them. To the contrary, plaintiff accuses defendants of failing to follow Judge Duncan's order. The Supreme Court has instructed, "Abstention is not in order simply because a pending state-court proceeding involves the same subject matter." *Id.* at 588 (citation omitted). Likewise, "federal courts are obliged to decide cases within the scope of federal jurisdiction."

*Id.*  And, "even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the 'exception, not the rule.'"  *Id.* at 593 (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)).  The court thus concludes that this case is not an exceptional one requiring the court to abstain under the *Younger* doctrine.

### IV.     Conclusion

The court exercises its discretion under the liberal standard for granting leave to amend and supplement pleadings.  For reasons discussed above, the court concludes, in part, that the filing of the plaintiff's proposed supplemental pleading is warranted in the interests of justice.  But plaintiff must remove the additional allegations in Count 7, as explained in this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motion for Leave to File Third Amended and Supplemental Complaint (Doc. 266) is granted in part and denied in part.  For reasons explained above, the court denies plaintiff's request for leave to include the additional allegations in Count 7 of his proposed supplemental pleading.  The court grants plaintiff leave to file his proposed supplemental pleading in all other respects.  Plaintiff must file his Third Amended and Supplemental Complaint, consistent with this Order, within 10 days of the date of this Order.

**IT IS SO ORDERED.**

**Dated this 7th day of December, 2016, at Topeka, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**