**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

CURTIS KLAASSEN, Ph.D.                     )
                      Plaintiff,        )        Case No. 13-CV-2561
                               )
v.                                          )
                               )
BARBARA ATKINSON, et al.                   )
                  Defendants.      )

## DR. STEVEN STITES'S MEMORANDUM IN SUPPORT
## OF HIS INDIVIDUAL MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

By: *Anthony F. Rupp*

ANTHONY F. RUPP, KS #11590
TARA S. EBERLINE, KS #22576
Foulston Siefkin LLP
32 Corporate Woods, Suite 600
Overland Park, KS 66210
(913) 498-2100
(913) 498-2101 (fax)
trupp@foulston.com
teberline@foulston.com

ATTORNEYS FOR DEFENDANTS

## TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................1

II.   ARGUMENTS AND AUTHORITIES ..............................................................2

    A.    Summary of the facts involving Dr. Stites. ....................................................2

    B.    Dr. Klaassen cannot establish that Dr. Stites retaliated against him for any alleged First Amendment protected speech. ................................................................................................5

        1.    Dr. Klaassen cannot establish that his alleged First Amendment protected speech was a motivating factor in Dr. Stites's decisions related to Dr. Klaassen.........................................5

        2.    Dr. Stites would have taken the same action regarding Dr. Klaassen in the absence of any protected conduct. .........................8

        3.    Dr. Stites is entitled to qualified immunity...............................................9

    C.    Dr. Klaassen cannot establish that Dr. Stites violated his Procedural Due Process rights in the alleged taking of the NIH grants.....................................................................................10

    D.    Dr. Klaassen cannot establish that Dr. Stites violated his Procedural Due Process rights in the termination of his employment. ....................................................................................11

    E.    Dr. Klaassen cannot establish a claim for tortious interference with contract................................................................12

        1.    Dr. Stites is entitled to absolute immunity for his testimony.............................................................................................13

        2.    Dr. Stites cannot be held personally liable for inducing a breach of contract to which KUMC was a party. ...............................13

        3.    No reasonable fact-finder could find that Dr. Stites acted maliciously. ................................................................................................14

        4.    Dr. Stites's actions were privileged. .....................................................14

        5.    Dr. Klaassen cannot establish Dr. Stites's actions caused his termination or alleged damages. ....................................................15

III.  CONCLUSION.................................................................................................15

ii

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CURTIS KLAASSEN, Ph.D. | ) | |
| Plaintiff, | ) | Case No.: 13-CV-2561 |
| | ) | |
| v. | ) | |
| | ) | |
| BARBARA ATKINSON, et al. | ) | |
| Defendants. | ) | |

**DR. STEVEN STITES'S MEMORANDUM IN SUPPORT
OF HIS INDIVIDUAL MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Dr. Steven Stites is named as an Individual Defendant in four counts of the
Amended Pretrial Order. Doc. 298. But there is no factual support for those counts against
Dr. Stites in the factual allegations in Section 3a of the same Amended Pretrial Order. Doc.
298, pp. 5-12. The following is the entirety of the factual allegations against Dr. Stites:

> On May 1, 2013, the chair of internal medicine called Klaassen into a meeting
> at KUMC in a small conference room. At the meeting, Klaassen stood up,
> advocated for his students and his research, accused KUMC of taking NIH grant
> monies without his permission, and asked Stites to provide his students with
> access to necessary research equipment. Stites abruptly ended the meeting and
> told Klaassen to leave. Stites had armed police officers (again) escort Klaassen
> out the building. Stites banned Klaassen from campus forever. Stites charged
> Klaassen with personal misconduct at a November 13, 2013 hearing.

Doc. 298, pp. 8-9.

None of these allegations provide a legal or factual basis to support the claims
against Dr. Stites, which are:

- Count 1: First Amendment Retaliation,
- Count 2: Violation of Procedural Due Process in the alleged taking of NIH
  grants,

1

- Count 3: Violation of Procedural Due Process in the January 2014 termination of Dr. Klaassen's employment, and
- Count 7: Tortious interference with contract.

In addition to the grounds for summary judgment identified in the Defendants' Consolidated Brief, Defendant Stites moves for Summary Judgment on the grounds set forth below. Dr. Stites further incorporates by reference the Consolidated Statement of Facts in Section I of the Consolidated Brief, and all legal arguments contained in the Consolidated Brief applicable to claims made against Dr. Stites. Doc. 326.

## II.   ARGUMENTS AND AUTHORITIES

### A.   Summary of the facts involving Dr. Stites.

Dr. Stites held two different positions during the relevant timeframe. He was the Chair of the Department of Internal Medicine from 2007-2014. SOF 52. And he was acting Executive Vice Chancellor ("EVC") from April 2012-January 2013. SOF 55. On December 31, 2011, EVC and Dean Barbara Atkinson's Chief of Staff called Dr. Stites and requested that Dr. Stites accept Dr. Klaassen into the Department of Internal Medicine. SOF 150. Dr. Stites agreed to do so and hoped to give Dr. Klaassen a fresh start. SOF 162. Dr. Klaassen moved to the Internal Medicine Department in January 2012. SOF 164–166. On April 9, 2012, Dr. Atkinson resigned from her roles as EVC and Dean of the Medical School. SOF 30. Upon her resignation, Dr. Stites stepped in as the Acting EVC. Dr. Stites did not receive a raise by accepting Dr. Klaassen into the Internal Medicine Department. SOF 54-55.

On May 31, 2012, the First Ad Hoc Faculty Hearing Committee issued a report finding Dr. Klaassen guilty of personal and professional misconduct and recommending censure with swift and increased punishment should further misconduct occur. SOF 193. As acting EVC, Dr. Stites had the responsibility to consider the committee's recommendations and act with regard to that report. He accepted the recommendations of the First Hearing

2

Committee and censured Dr. Klaassen. SOF 194. Dr. Klaassen acknowledged he accepted the censure. SOF 195. Dr. Stites held the Acting EVC position until a permanent EVC—Dr. Girod—was selected on February 1, 2013. SOF 55. He then continued his role as Chair of Internal Medicine, by which time Dr. Klaassen had been a member of the department for more than a year. SOF 52, 166, 199.

On May 1, 2013, Dr. Stites called a meeting with Dr. Klaassen and several members of Internal Medicine to discuss budget problems with several R01 grants on which Dr. Klaassen served as PI. The events of that meeting are described in SOF 212-232. Less than a week later, on May 7, 2013, Dr. Klaassen had another confrontation with Ms. Hopkins, one of the attendees of the May 1 meeting. That confrontation is described at SOF 233–252.

Following the events of May 1 and May 7, 2013, Dr. Stites placed Dr. Klaassen on paid administrative leave. SOF 253. The letter from Dr. Stites stated:

> It has been observed by me and reported to me by others that you have engaged in behavior and made statements that were belligerent and abusive to other faculty and staff. You made these statements and engaged in this behavior in a meeting involving departmental leadership, and subsequently with a department staff member. These interactions were frightening to the individuals and witnesses concerned and totally unacceptable in our University work environment.

SOF 254. The letter explained that while Dr. Klaassen was on administrative leave, his duties at the University were suspended. SOF 253. It was also explained that all programs he directed, including his grants, would be reviewed in his absence. SOF 256. Several days later, Dr. Klaassen sent an email to Dr. Stites, Dr. O'Brien-Ladner, and Dr. Dawn apologizing for his statements during the May 1, 2013 meeting (SOF 260) though he later testified his apology was insincere (SOF 262). Dr. Klaassen did not apologize to Ms. Hopkins. SOF 261.

Although Dr. Klaassen was instructed by the University on May 8, 2013, not to direct any programs at the University while he was on leave, he continued to do so. SOF 256–257. In fact, he told his students to spend money freely in his absence. SOF 269. He also told them to lie about his extensive contacts with them. SOF 278. He wrote: "ALL KNOW THAT WE HAVE NOT COMMUNICATED TODAY OR ANY DAY SINCE MAY 8." SOF 278.

On November 1, 2013, shortly before the Second Faculty Ad Hoc Hearing Committee convened to hear evidence regarding Dr. Klaassen's conduct, Dr. Klaassen advised the members of his lab:

> I talked to my lawyer and asked if you guys should or should not talk to a news reporter. He said it was OK. If you do, say positive things about me and negative things about the university. Try not to say anything bad about me (I realize you probably have a list of 1000 bad things), and when it comes to the university, emphasize the bad – especially in regard to education.

SOF 270.

The conclusion of the Second Ad Hoc Hearing Committee is described in SOF 271–281. The decision of Dr. Girod to terminate Dr. Klaassen's employment is described in SOF 282–286. The subsequent administrative proceedings are described in SOF 287–295.

**B.  Dr. Klaassen cannot establish that Dr. Stites retaliated against him for any alleged First Amendment protected speech.**[1]

**1.  Dr. Klaassen cannot establish that his alleged First Amendment protected speech was a motivating factor in Dr. Stites's decisions related to Dr. Klaassen.**

There are no allegations in the Amended Pretrial Order that provide a basis upon which a reasonable jury could conclude Dr. Stites took any action against Dr. Klaassen based on Dr. Klaassen's purported First Amendment protected speech.[2] None of the alleged protected speech was directed at Dr. Stites, and there is no temporal proximity between Dr. Stites's actions and any of Dr. Klaassen's speech.

The fourth element in the *Garcetti/Pickering* analysis, which governs First Amendment retaliation claims, is causation.[3] *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009); *see also Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cty., Ill.*, 391 U.S. 563 (1968). Although causation is often a question of fact, the Court must award summary judgment on this element if Dr. Klaassen cannot show "evidence from which a reasonable jury could find the required causal link between the protected activity and [Dr. Stites's] allegedly retaliatory actions." *McDonald v. City of Wichita, Kan.*, 156 F. Supp. 3d

---

[1] Dr. Stites has attached as Exhibit A to this Brief two decision trees that, when reviewed together, provide the Court a visual description of the *Garcetti/Pickering* analysis applicable to the First Amendment retaliation claim against Dr. Stites. Defendants contend that Dr. Klaassen's claim fails at each stage of the analysis.

[2] In light of the dearth of allegations against Dr. Stites in the Amended Pretrial Order, Dr. Stites finds himself in the untenable situation of having to speculate as to the specific basis of the claims against him. Summary judgment should be entered in favor of Dr. Stites for that reason alone. *See, e.g.*, *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 817-18 (10th Cir. 1979) (noting that pretrial order represents "a complete statement of all the contentions of the parties" and holding that trial court has discretion to exclude facts and contentions not included in pretrial order); *D'Souza-Klamath v. Cloud Cty. Health Ctr., Inc.*, No. 07-4031, 2009 WL 902377, at *17–18 (D. Kan. Mar. 31, 2009*), aff'd sub nom.*, 363 F. App'x 658 (10th Cir. 2010).

[3] The complete *Garcetti/Pickering* analysis is described in the Consolidated Brief. Doc. 326, pp. 88–105. Dr. Stites's arguments with respect to elements one through three are in the Consolidated Brief, and his arguments with respect to elements four and five are in this Brief.

1279, 1307 (D. Kan. 2016) (citing *Reinhardt v. Albuquerque Bd. of Educ.*, 595 F.3d 1126, 1134 (10th Cir. 2010)). Temporal proximity is often a factor in these cases, but events intervening between the alleged protected act and the adverse employment action undermine evidence of retaliatory motive. *Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1278 (10th Cir. 2007). Moreover, a gap of more than three months between the alleged protected conduct and the adverse action is insufficient to support a finding that a defendant acted with an improper motive. *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013). And in arguing motive, "speculation or hunches amidst rumor and innuendo will not suffice." *Deschenie*, 473 F.3d at 1278 (citation omitted).

**Transfer to Internal Medicine in January 2012.** Dr. Atkinson—not Dr. Stites—made the decision to transfer Dr. Klaassen to the Internal Medicine Department. SOF 152. Dr. Atkinson did so because Dr. Klaassen's conduct had irretrievably damaged relationships with faculty and staff in Pharm/Tox and created a hostile environment, thereby interfering with the operations of the department and jeopardizing the ability of the department to succeed. SOF 164. Dr. Stites had no personal participation in this decision, and he therefore cannot be held liable for it. *See Evans v. Fogarty*, 241 F. App'x 542, 551 (10th Cir. 2007) (requiring personal participation to be held liable for alleged First Amendment retaliation). Rather, Dr. Stites was simply the department chair who agreed to accept Dr. Klaassen into the department in an effort to help Dr. Klaassen. SOF 53, 162–163. One of Dr. Klaassen's students, Dr. Helen Renaud, testified that Dr. Stites and the Internal Medicine Department were welcoming to the lab members and that Dr. Stites was friendly and helpful. SOF 169. Agreeing to accept Dr. Klaassen into the Department of Internal Medicine at the Dean's request cannot be interpreted as adverse

action, and it is inadequate personal participation to support a claim of retaliation.[4] Dr. Klaassen himself wrote that he would conduct himself in a professional manner and that he had sought out help to understand his behavior. SOF 161.

**Placing Dr. Klaassen on Administrative Leave on May 8, 2013.** Dr. Stites placed Dr. Klaassen on administrative leave on May 8, 2013, following Dr. Klaassen's inappropriate conduct on May 1 and May 7 as set forth in SOF 212-253. This administrative leave occurred nearly two years after Dr. Klaassen's alleged First Amendment activities. These events involved solely workplace issues, and there is no allegation that Dr. Klaassen's conduct in those meetings was protected by the First Amendment. There is no evidence linking the old Lawrence Journal-World articles, the 2011 PowerPoint presentations, or Dr. Klaassen's comments during the 2011 Stakeholder's Meeting to the 2013 decision to place Dr. Klaassen on paid administrative leave. No reasonable jury could conclude that any witness associated with the events of May 1 and May 7, including Dr. Stites, was reacting to an alleged exercise of free speech at least eighteen months earlier, rather than the contemporaneous events occurring on May 1 and May 7.

In addition, this question was clearly addressed by the Third Hearing Committee, which found that Dr. Stites's decision to place Dr. Klaassen on administrative leave with pay was an "authorized administrative action that is not a disciplinary sanction," and that his response was "consistent with preserving a safe work environment as required by the Kansas State Policy on Workplace Violence and with the Human Resource policies for KU Medical Center." SOF 291.

---

[4] It is unclear precisely from the Amended Pretrial Order whether Dr. Klaassen alleges that Dr. Stites denied Dr. Klaassen's students access to research equipment. There are no claims by any students in this lawsuit, and there is no evidence to support that Dr. Stites ever made any decision to restrict access to equipment. Dr. Renaud's testimony demonstrates otherwise. SOF 169. Further, there is nothing in the Pretrial Order reflecting any restriction of access by Dr. Stites or that Dr. Stites was motivated to restrict access in retaliation against alleged protected speech.

Dr. Klaassen's allegations regarding the May 1 and May 7 events were tried in both the KJRA Case and the State Case. SOF 296–302, 415–416.

**"Facilitating" Dr. Klaassen's termination.** Dr. Stites did not terminate Dr. Klaassen's employment, and therefore cannot be held liable for it. *See Evans*, 241 F. App'x at 551. Further, Dr. Klaassen cannot establish any causal connection between any of his alleged protected conduct and Dr. Stites's alleged "facilitation" of Dr. Klaassen's termination. There is neither temporal proximity nor other evidence supporting this allegation, as more than two years had passed since Dr. Klaassen's most recent alleged First Amendment speech.

    2.    <u>Dr. Stites would have taken the same action regarding Dr. Klaassen in the absence of any protected conduct.</u>

Dr. Klaassen cannot establish direct or circumstantial evidence that Dr. Stites would not have taken the same actions absent the conduct Dr. Klaassen alleges is protected by the First Amendment. Dr. Klaassen's allegedly protected conduct had nothing to do with any decisions Dr. Stites made. This final factor is important because a "'rule of causation which focuses solely on whether protected conduct played a part' in an adverse employment decision 'could place an employee in a better position as a result of the exercise of constitutionally protected conduct than he would have occupied had he done nothing.'" *Trant v. Oklahoma*, 754 F.3d 1158, 1167 (10th Cir. 2014) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285 (1977)); *see also Hartman v. Moore*, 547 U.S. 250, 260 (2006) (discussing *Mt. Healthy*) ("If there is a finding that retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind.").

Dr. Stites made his decisions because of Dr. Klaassen's conduct. These actions would have occurred regardless of any alleged protected action Dr. Klaassen took and are unrelated by time or otherwise to his alleged protected conduct.

### 3. Dr. Stites is entitled to qualified immunity.

Dr. Stites is entitled to qualified immunity on the First Amendment retaliation claims against him unless Dr. Klaassen establishes that Dr. Stites violated clearly stablished law. *District of Columbia v. Wesby*, No. 15-1485, 2018 WL 491521, at *10-11 (U.S. Jan. 22, 2018); *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) ("A right is clearly established if, at the time of the conduct, existing precedent has 'placed the statutory or constitutional question beyond debate.'") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Dr. Klaassen cannot establish that it should have been clear to a reasonable University administrator that his conduct was unlawful in the situation he confronted. *See Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (explaining that the "dispositive inquiry . . . is whether it would [have been] clear to a reasonable" person in the individual's position "that [their] conduct was unlawful in the situation [they] confronted") (citation omitted).

Furthermore, Dr. Stites's actions were objectively reasonable. *See McBeth v. Himes*, 598 F.3d 708, 724-25 (10th Cir. 2010) (applying the objectively reasonable standard to First Amendment retaliation claim). It was objectively reasonable to accept the Dean's request that Dr. Klaassen be offered a position in the Internal Medicine Department. It was objectively reasonable to place Dr. Klaassen on administrative leave following the events of May 1 and May 7, 2013. The objective reasonableness of these decisions is illustrated by the findings of subsequent faculty ad hoc hearing committees, SOF 280, 290–294, 309–310, and the judgment rendered in the University's favor in two cases considering these decisions in Wyandotte County, SOF 325, 424–425.

9

Even if this Court broke new ground by finding Dr. Stites's conduct was not objectively reasonable, he is still entitled to judgment as a matter of law because of the breathing room afforded by qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."). In addition to the lack of clarity in the application of the law to the facts described in the Defendants' Consolidated Brief, Dr. Stites should be granted qualified immunity because there are, at a minimum, reasonable grounds for mistaken judgments on the questions Dr. Stites faced. As a result, Dr. Stites is entitled to qualified immunity.

### C. Dr. Klaassen cannot establish that Dr. Stites violated his Procedural Due Process rights in the alleged taking of the NIH grants.

In addition to the arguments in the Consolidated Brief that apply to all Defendants named in Count 2, Dr. Stites also asserts that claim must fail because Dr. Klaassen has not alleged – and the record does not show – that Dr. Stites personally participated in the alleged violation. *See Quint v. Cox*, 348 F. Supp. 2d 1243, 1249 (D. Kan. 2004). Dr. Stites was not named in the Pretrial Order among those allegedly conspiring against Dr. Klaassen, and Dr. Stites was not the decision-maker. *See Pemberton v. Patton*, 673 F. App'x 860, 868 (10th Cir. 2016). Furthermore, qualified immunity protects Dr. Stites, as Dr. Klaassen cannot point to any clearly established law supporting the proposition that Dr. Stites's actions were unlawful or that his level of involvement in any alleged violation regarding NIH grants was sufficient to support individual liability. *See Jackson v. Kan. Cty. Ass'n. Multiline Pool*, No. 03-4181, 2005 WL 756773, at *7 (D. Kan. Jan. 19, 2005) (no liability if no personal participation).

**D.  Dr. Klaassen cannot establish that Dr. Stites violated his Procedural Due Process rights in the termination of his employment.**

This Court has dismissed claims against Dr. Stites related to Dr. Klaassen's allegation that he had a protected property interest in his continued employment. Doc. 102, p. 40. It is unclear whether Dr. Klaassen seeks to allege that Dr. Stites violated Dr. Klaassen's procedural due process rights by allegedly testifying falsely at the November 2013 hearing. But this Court already has ruled that Dr. Stites is entitled to absolute immunity for his hearing testimony. Doc. 102, pp. 39-40. Dr. Klaassen did not contest this ruling in his motion for reconsideration. Doc. 108. Further, this Court granted Dr. Stites qualified immunity on the procedural due process claim against him. Doc. 102, p. 40. The Court declined to dismiss Dr. Klaassen's claim against Dr. Stites entirely because it concluded that Dr. Klaassen plausibly pled a deprivation of a liberty interest.

In his Third Amended and Supplemental Complaint, Dr. Klaassen alleged that Dr. Stites damaged Dr. Klaassen's liberty interest in his reputation by testifying at the November 2013 hearing that Dr. Klaassen lost control and screamed at him for up to 10 minutes in May 2013.[5] Doc. 296, pp. 31-32. The basis for this claim has been abandoned in the Pretrial Order. Doc. 298, p. 23. *See Azim v. Tortoise Capital Advisors, LLC*, No. 13-2267-DDC-JPO, 2016 WL 3405126, at *18 (D. Kan. June 21, 2016) (concluding that claims not found in pretrial order are

---

[5] This allegation is inaccurate. On cross-examination, Dr. Stites first testified that he did not remember how long the exchange with Dr. Klaassen lasted. When Dr. Klaassen's counsel pressed further, he guessed that it "was probably somewhere between five and ten minutes." SOF 276. Under the circumstances, even if the confrontation lasted less than five minutes, there is nothing false about this testimony. Dr. Stites made no factual statement intended to convince the faculty that he knew the specific length of time of the confrontation. Dr. Klaassen's counsel asked him to speculate as to the length of the confrontation he offered his speculation. He had prefaced it with the truthful statement that he did not know the length of the confrontation. Moreover, the Second Hearing Committee was presented the entire tape recording of the May 1 meeting, so it was able to reach its own conclusions with regard to what transpired. SOF 277. Further, Dr. Klaassen's counsel presented these same arguments to three ad hoc hearing committees, the Chancellor, the KJRA Court and the court and jury in the State Case, all of which rejected the same.

abandoned). In any event, the claim would fail for the same reason it failed earlier in this case: Dr. Stites is entitled to absolute immunity for his hearing testimony. *See* Doc. 102, pp. 39-40. In addition, Dr. Stites is again entitled to qualified immunity because there was no constitutional violation and no clearly established law that prohibited Dr. Stites's alleged acts.

E.      **Dr. Klaassen cannot establish a claim for tortious interference with contract.**

The factual basis for Count 7, the claim of Tortious Interference with Contract against Dr. Stites, is not mentioned in the factual contentions in Section 3a of the Amended Pretrial Order. The claim first appears as legal claim in Section 4a, and takes up one short paragraph of the Amended Pretrial Order:

> Defendant acted in a reckless, willful, and wanton manner and tortiously interfered with Dr. Klaassen's contract of employment with the University by participating in the decision to terminate Dr. Klaassen in violation of University of Kansas' policies and procedures including the University of Kansas's faculty handbook, and by testifying falsely at administrative hearings.

Doc. 298, p. 25. Dr. Klaassen does not set forth any factual basis for this claim in the Amended Pretrial Order (and may not do so now), and cannot establish any of the necessary elements of a tortious interference claim under the evidence.

"The elements essential to recovery for tortious interference with a contract are: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom." *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 150 (Kan. 2003) (citation omitted). Not all actions resulting in a third-party breach of contract are actionable; "[a] claim of tortious interference with a contract is predicated upon malicious conduct by the defendant." *Id.* at 152.

This claim fails for any of six reasons: (1) Dr. Stites is entitled to absolute immunity for his actions in testifying at the November 13, 2013 hearing; (2) Dr. Stites, as the Chair of the Internal Medicine Department—the department to which Dr. Klaassen was assigned—cannot be

held personally liable for an alleged breach of an employment contract to which KUMC is a party; (3) there is no basis to find malice; (4) Dr. Stites's actions were privileged under Kansas law, (5) Dr. Klaassen cannot show causation; and (6) Dr. Klaassen cannot show damages.

### 1.    Dr. Stites is entitled to absolute immunity for his testimony

This Court has stated that "Stites is entitled to absolute immunity for his hearing testimony," and thus, he cannot be held liable for tortious interference with contract because of his testimony. Doc. 102, p. 40. *See also Rehberg v. Paulk*, 566 U.S. 356 (2012). Under the "law of the case" doctrine, Dr. Klaassen may not challenge these findings. *Loeffelbein v. Rare Medium Grp.*, No. 02-2435-CM, 2004 WL 957832, at *2 (D. Kan. Feb. 26, 2004).

### 2.    Dr. Stites cannot be held personally liable for inducing a breach of contract to which KUMC was a party.

Dr. Stites may not be held liable because, "[a] corporate agent, acting within the scope of his employment, cannot be held liable for tortious interference with a contract to which the corporation is a party." Doc. 102 at 53. Likewise, an employee acting in furtherance of the employer's business, or acting in a manner such that their actions are legally attributable to the employer, may not be held personally liable for an alleged tortious interference with contract. *Id.*; *Ablulimir v. U-Haul Co. of Kan.*, No. 11-4014, 2011 WL 2731774, at *4 (D. Kan. July 13, 2011); *Tyrrell v. Boeing Co.*, No. 91-1285, 1994 WL 114841, at *18 (D. Kan. Mar. 24, 1994); *Wolfenbarger v. Boeing Co.*, No. 92-1117, 1994 WL 149187, at *10 (D. Kan. Apr. 1, 1994). Dr. Stites was at all times acting within the scope of his employment in his dealings with Dr. Klaassen, and the alleged actions taken by Dr. Stites would be legally attributable to KUMC; thus, Dr. Klaassen may not pursue a claim for tortious interference with contract against Dr. Stites.

In a previous case in this district, the plaintiff brought a tortious interference claim against the individual supervisor that terminated the plaintiff, arguing that the department head acted with "personal purposes" and "bad motives." *Fletcher v. Wesley Medical Center*, 585 F.Supp. 1260, 1262 (D. Kan. 1984). The Court recognized that even if the individual defendant's decision rested on bad motives, "her bad motives would be legally attributable to the corporation for purposes of plaintiff's age discrimination claims, and do not undercut the fact that in dismissing plaintiff [the defendant] was acting within the scope of her duties as the head of the department in which plaintiff worked." *Id.* (internal citations omitted).

### 3.      No reasonable fact-finder could find that Dr. Stites acted maliciously.

Dr. Klaassen cannot demonstrate malicious intent by Dr. Stites. "A claim of tortious interference with a contract is predicated upon malicious conduct by the defendant." *Burcham*, 77 P.3d at 152; *see also* Pattern Inst. Kan. Civil 124.91 ("Additionally, the plaintiff must prove malicious conduct by the defendant.") "Malice is the intent to do harm without any reasonable justification or excuse." Pattern Inst. Kan. Civil 103.05. To withstand summary judgment, there must be evidence that Dr. Stites's conduct was malicious. *Linden Place, LLC v. Stanley Bank*, 167 P.3d 374, 380 (Kan. Ct. App. 2007). There is no such evidence. Therefore, his claim fails. *See, e.g.*, *id.*; *Woodland Investor Member, L.L.C. v. Soldier Creek, L.L.C.*, No. 11-2013, 2012 WL 1893512, at *19 (D. Kan. May 23, 2012).

### 4.      Dr. Stites's actions were privileged.

There has been no evidence that the University interfered with any contract belonging to Dr. Klaassen or that Dr. Stites participated in such a breach. Even if there had been, however, the "Kansas Supreme Court has recognized that some interferences with contractual relations are privileged. An employee such as a supervisor is privileged to advise or induce her employer to breach a contract with another employee." *Schartz v. U.S.D. No. 512*, 953 F. Supp. 1208, 1220

(D. Kan. 1997). As the Acting EVC or Chair of the Department of Internal Medicine, Dr. Stites was in a position to provide advice and guidance regarding Dr. Klaassen's employment, and thus, such actions are privileged. *See id.*

### 5. Dr. Klaassen cannot establish Dr. Stites's actions caused his termination or alleged damages.

To succeed on a tort claim, Dr. Klaassen must be able to establish causation—he must show that Dr. Stites actually procured the alleged breach. The decision to terminate Dr. Klaassen was made by Dr. Girod, not Dr. Stites. SOF 282–284. Thus, there is no causation.

## III.   CONCLUSION

Dr. Klaassen cannot establish any of the elements of any of his claims against Dr. Stites. Accordingly, summary judgment is appropriate in favor of Dr. Stites.

Respectfully submitted,

By: /s/ *Anthony F. Rupp*
Anthony F. Rupp, KS #11590
Tara S. Eberline, KS #22576
FOULSTON SIEFKIN LLP
32 Corporate Woods, Suite 600
Overland Park, KS 66210
(913) 498-2100
(913) 498-2101 (fax)
trupp@foulston.com
teberline@foulston.com

ATTORNEYS FOR DEFENDANTS

15

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of January, 2018, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following:

Alan L. Rupe #08914
Jeremy K. Schrag #24164
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone: (316) 609-7900
Facsimile: (316) 630-8021
Email: alan.rupe@lewisbrisbois.com
Email: jeremy.schrag@lewisbrisbois

ATTORNEYS FOR PLAINTIFF


/s/ *Anthony F. Rupp*
ATTORNEY FOR DEFENDANTS