**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

CURTIS KLAASSEN, Ph.D.                        )
                                       Plaintiff,           )           Case No. 13-CV-2561
                                                           )
v.                                                          )
                                                           )
BARBARA ATKINSON, et al.                       )
                                       Defendants.         )

## <u>DEFENDANT HAGENBUCH'S MEMORANDUM IN SUPPORT OF HIS INDIVIDUAL MOTION FOR SUMMARY JUDGMENT</u>

Respectfully submitted,

By: *Anthony F. Rupp*

ANTHONY F. RUPP, KS #11590
TARA S. EBERLINE, KS #22576
Foulston Siefkin LLP
32 Corporate Woods, Suite 600
Overland Park, KS 66210
(913) 498-2100
(913) 498-2101 (fax)
<u>trupp@foulston.com</u>
<u>teberline@foulston.com</u>

ATTORNEYS FOR DEFENDANTS

## TABLE OF CONTENTS

I.   INTRODUCTION..................................................................................................1

II.  ARGUMENTS AND AUTHORITIES........................................................................2

  A.   Summary of facts related to claim against Dr. Hagenbuch. ..............................2

  B.   Dr. Klaassen cannot establish a claim for tortious interference
       with a prospective business relationship against Dr.
       Hagenbuch. ..........................................................................................4

       1.   The Amended Pretrial Order lacks factual allegations to
            support a claim against Dr. Hagenbuch. .......................................5

       2.   Dr. Klaassen has identified no business relationship or
            expectancy with a probability of future economic benefit.........................6

       3.   Dr. Klaassen cannot establish that he was reasonably
            certain to have realized a business expectancy except for
            the conduct of Dr. Hagenbuch. ...................................................7

       4.   Dr. Klaassen cannot establish intentional misconduct or
            malicious conduct by Dr. Hagenbuch. ..........................................8

       5.   Dr. Klaassen cannot identify any damages resulting from
            Dr. Hagenbuch's alleged conduct. ...............................................9

       6.   Dr. Hagenbuch's actions were privileged. ...................................10

  C.   This Court should decline to exercise jurisdiction over Dr.
       Klaassen's claims against Dr. Hagenbuch. ........................................10

III. CONCLUSION ....................................................................................11

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**


CURTIS KLAASSEN, Ph.D.                              )
                          Plaintiff,        )        Case No.: 13-CV-2561
                                         )
v.                                                 )
                                         )
BARBARA ATKINSON, et al.                           )
                        Defendants.        )


**DEFENDANT HAGENBUCH'S MEMORANDUM IN SUPPORT
OF HIS INDIVIDUAL MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Dr. Bruno Hagenbuch was and is a faculty member in the Department of Pharmacology, Toxicology and Therapeutics ("Pharm/Tox") at the University of Kansas Medical Center. Dr. Klaassen never reported to Dr. Hagenbuch, and Dr. Hagenbuch made no employment decisions related to Dr. Klaassen.

Dr. Klaassen has submitted as Section 3a of the Amended Pretrial Order (Doc. 298) several pages of factual contentions. There are no allegations of alleged wrongdoing by Dr. Hagenbuch included in those factual contentions. The sole mention of Dr. Hagenbuch is in a timeline that Plaintiff's counsel identified as being included "[t]o assist the Court with this case's important events . . ." Doc. 298. There, it mentions that the T-32 Training Grant was transferred to Dr. Hagenbuch on December 15, 2011.

Thereafter, in Section 4a of the Amended Pretrial Order, Dr. Klaassen sets forth his legal claims against the Individual Defendants. Dr. Hagenbuch is included in one of the Counts: Count 5, Kansas Common Law Interference with a Prospective Business Relationship. The sole factual allegation states without specificity: "Defendants tortiously interfered with Klaassen's business

relationship with the National Institute of Health by removing Dr. Klaassen as principal investigator from NIH grants, transferring the NIH grants to other University faculty members, and by spending money of Dr. Klaassen's NIH grants without permission." Doc. 298, p. 24.

The Amended Pretrial Order fails to identify any specific actions by Dr. Hagenbuch that meet any of the elements of the claim of tortious interference. Dr. Hagenbuch is entitled to summary judgment on all issues.

In addition to the grounds for summary judgment identified in the Defendants' Consolidated Brief, Defendant Hagenbuch moves for summary judgment on the grounds described herein. Dr. Hagenbuch incorporates by reference the Statement of Facts in Section I of the Consolidated Brief, and all legal arguments contained in the Consolidated Brief applicable to claims made against Dr. Hagenbuch. Doc. 326.

## II. <u>ARGUMENTS AND AUTHORITIES</u>

### A. **Summary of facts related to claim against Dr. Hagenbuch.**

Dr. Klaassen's claims against Dr. Hagenbuch stem solely from the NIH's assignment of Dr. Hagenbuch as the PI of the Training Grant, following the University's request. The Applicant for this Training Grant was the University of Kansas Medical Center Research Institute, Inc. ("KUMCRI"), which is not a defendant in this or any of Dr. Klaassen's lawsuits. SOF 351, 352. The Administrative Official to be notified if the award was made was not Dr. Klaassen. SOF 354. The Official Signing for the Organization was not Dr. Klaassen. SOF 355. On July 4, 2011, KUMCRI was notified that it had been awarded the Training Grant. SOF 357. At that time, the PI on the Training Grant was Dr. Klaassen. SOF 340.

In Exhibit 14, which is the Application for the Training Grant dated May 10, 2005, the program is described as follows:

> During the past 25 years, over 200 students have received instruction in the Toxicology Training Program at the University of Kansas Medical Center. . . . Contained in this proposal is a request for five additional years of funding for the program.

SOF 356.

This Training Grant was awarded to the KUMCRI for the purpose of training students at the Medical School. SOF 356. It did not belong to Dr. Klaassen. The role of the PI is as an individual designated by the applicant organization to have the appropriate level of authority and responsibility to direct the project or program supported by the award. SOF 359.

In the fall of 2011, both before and after the request for a change in PI on the Training Grant, there was great disruption in the Pharm/Tox Department as a result of Dr. Klaassen's agitated behavior after having been removed as Department Chair. By his own admission, Dr. Klaassen was the precipitating factor in the disruption of the Pharm/Tox Department. He wrote on January 12, 2012, "I think the Department has become de-unified the last few months, and I am probably the reason for most of that splintering, and I will take full responsibility." SOF 16. The University made the decision to work with the NIH to remove Dr. Klaassen from that role and replace him with another qualified faculty member. Dr. Hagenbuch was chosen for that role. SOF 50. Dr. Klaassen has acknowledged that it is absolutely within the authority of the NIH to change the PI on a grant. SOF 379. The NIH has not criticized the University in association with the change in the Training Grant. SOF 380.

Dr. Hagenbuch is one of two signators on a November 21, 2011, KUMCRI letter to the NIH requesting an immediate change in PI status for the T32 Training Grant. The other and first signator is Dr. Gregory Kopf, who signed as the Associate Vice Chancellor for Research Administration. Dr. Kopf is not a defendant. Dr. Hagenbuch is addressed in the letter as the new proposed PI, and the letter discusses his qualifications to serve in that role. SOF 375.

3

During the course of his deposition, Dr. Klaassen was questioned about the facts upon which he bases his claim against Dr. Hagenbuch. The following exchange occurred:

> Q: The next person who is listed is Doctor Hagenbuch. Why did you sue Dr. Hagenbuch?
>
> A: Well, he wrote to the NIH and asked for my, my training grant.
>
> Q: And did the NIH agree and transfer your training grant?
>
> A: Yes.
>
> Q: That's within the – that's within the ultimate authority of the NIH to do so, is that correct?
>
> A: They can do that, but they don't do it except in this crazy case. This is a, kind of a first time.
>
> Q: Doctor Hagenbuch, is he a member of the mob?
>
> A: Well, in a way he was forced into it. He is from Switzerland, he's a very good scientist. He doesn't understand the American system and he probably didn't understand that he was becoming a part of the mob by doing what he did. I feel sorry for him.
>
> Q: Sorry enough to sue him, is that correct?
>
> A: Well, that's the American way and, you know, some way we have to teach the University of Kansas how not to do things and I need to get some money to pay these students whose lives have been ruined.

SOF 51.

Dr. Klaassen's own testimony demonstrates that Dr. Klaassen sued Dr. Hagenbuch solely because he was a signatory on a letter that sets forth Dr. Hagenbuch's qualifications as a PI to take over such responsibility of the Training Grant.

**B.      Dr. Klaassen cannot establish a claim for tortious interference with a prospective business relationship against Dr. Hagenbuch.**

Nothing about the process of accepting the University's request to assume the role as Training Grant PI constitutes tortious interference by Dr. Hagenbuch. And there is nothing in the

4

allegations or in the evidence that could cause a jury to find in favor of Dr. Klaassen and against

Dr. Hagenbuch on a claim of tortious interference.

The Kansas Supreme Court identifies the elements of tortious interference with a

prospective business relationship to include:

(1)    the existence of a business relationship or expectancy with the probability
       of future economic benefit to the plaintiff;

(2)    the defendant knew of the relationship or expectancy with the probability
       of future economic benefit to the plaintiff;

(3)    that, except for the conduct of the defendant, plaintiff was reasonably
       certain to have realized the expectancy;

(4)    intentional misconduct by the defendant; and

(5)    damages suffered by plaintiff as a direct or proximate cause of the
       defendant's misconduct.

Doc 102, p. 52 (citing *Turner v. Halliburton*, 722 P.2d 1106, 1115 (Kan. 1986)); *see also*

*Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 151 (Kan. 2003). Tortious interference with a

prospective business relationship is also "predicated upon malicious conduct by the defendant."

*Burcham*, 77 P.3d at 151 (quoting *Turner*, 722 P.2d at 1115); *L&M Enter., Inc. v. BEI Sensors &*

*Sys. Co.*, 231 F.3d 1284, 1288 (10th Cir. 2000). The Amended Pretrial Order does not set forth a

factual basis for any such claim against Dr. Hagenbuch.

**1.    The Amended Pretrial Order lacks factual allegations to support a
       claim against Dr. Hagenbuch.**

The Amended Pretrial Order is devoid of any allegations of wrongdoing by Dr.

Hagenbuch. The sole factual reference to him is that he became the Principal Investigator of the

Training Grant on December 15, 2011. Previously, the PI on that grant had been Dr. Klaassen.

Whereas Dr. Klaassen makes numerous allegations of purported claims related to some of the

Individual Defendants, Dr. Hagenbuch is barely mentioned in the factual allegations. Dr.

Hagenbuch finds himself in the untenable situation of having to speculate as to the specific basis of the claims against him. Summary judgment should be entered in favor of Dr. Hagenbuch for that reason alone. *See, e.g.*, *Trujillo v. Uniroyal Corp.*, 608 F.2d 815, 817-18 (10th Cir. 1979) (noting that pretrial order represents "a complete statement of all the contentions of the parties" and holding that the trial court has discretion to exclude facts and contentions not included in pretrial order); *D'Souza-Klamath v. Cloud Cty. Health Ctr., Inc.*, No. 07-4031, 2009 WL 902377, at *17–18 (D. Kan. Mar. 31, 2009*), aff'd sub nom.*, 363 F. App'x 658 (10th Cir. 2010).

Despite no specific mention of Dr. Hagenbuch's alleged wrongful acts in the Factual Contentions of Section 3a, at page 24 of the Amended Pretrial Order (Doc. 298), Dr. Klaassen broadly asserts a legal claim that Dr. Hagenbuch, along with three other Defendants, interfered with his relationship with the NIH by (1) removing him as PI from NIH grants, (2) transferring the NIH grants to other University faculty members, and (3) spending money out of NIH grant accounts without his permission. Doc. 298, pp. 24-25. Dr. Klaassen does not distinguish which Defendant allegedly engaged in which of the three alleged actions. He should thus be precluded from maintaining this argument. *See Trujillo*, 608 F.2d at 817-18; *D'Souza-Klamath*, 2009 WL 902377, at *17–18.

### 2. Dr. Klaassen has identified no business relationship or expectancy with a probability of future economic benefit.

"The first element of a claim for tortious interference with business expectancy requires an allegation of 'the existence of a business relationship or expectancy with the probability of future economic benefit to the plaintiff.'" *Neonatal Prod. Grp., Inc. v. Shields*, No. 13-CV-2601, 2014 WL 6685477, at *14 (D. Kan. Nov. 26, 2014) (quoting *Turner*, 722 P.2d at 1115). Likewise, the plaintiff must show that a prospective business relationship actually existed. *Indep.*

*Drug Wholesalers Grp., Inc. v. Denton*, No. 92-2164, 1993 WL 191393, at *6 (D. Kan. May 13, 1993).

Dr. Klaassen has not established he had a business relationship or expectancy with the NIH or that any such relationship had a probability of future economic benefit to him. The Training Grant was awarded by the NIH to KUMCRI, and the University was responsible to the NIH for the performance on the grant. As the employer, the University had the right to assign work. Dr. Klaassen's "relationship" with the NIH was as an employee of the University; he did not have a separate business relationship. Dr. Klaassen did not gain a property interest in the grants because he had been designated as the PI. KUMCRI is the grantee of the Training Grant and is the recipient of funds under the grant. SOF 353. As recognized by the NIH Grants Policy Statement, the PI is "an individual *designated by the applicant organization* to have the appropriate level of authority and responsibility to direct the project or program supported by the award." SOF 359 (emphasis added). Dr. Klaassen has no ability to apply for the Training Grant on his own; rather, only KUMCRI may do so. Finally, the purpose of the Training Grant—to allow the University to train and develop new faculty—belies any claim that Dr. Klaassen had a business relationship or expectancy from the Training Grant.

Dr. Klaassen's lack of a business relationship is further demonstrated by his own compensation history. The University paid Dr. Klaassen a salary as a faculty member. That salary was not reduced from the time he was removed as the PI of the Training Grant in December of 2011 through the termination of his employment in January 2014. SOF 376.

### 3.    Dr. Klaassen cannot establish that he was reasonably certain to have realized a business expectancy except for the conduct of Dr. Hagenbuch.

Dr. Klaassen cannot establish that he was reasonably certain to have realized a business expectancy except for the fact that Dr. Hagenbuch's signature was one of the signatures on a

letter to the NIH. This element requires that "except for" Dr. Hagenbuch's alleged tortious actions, Dr. Klaassen would have retained some identifiable business expectancy; this requires "but for" causation. *See Kendall State Bank v. Archway Ins. Servs.*, Nos. 11-2403-KHV, 10-2617-KHV, 2012 WL 3758647, at *4 (D. Kan. Aug. 29, 2012); *Cohen v. Battaglia*, 202 P.3d 87, 96 (Kan. Ct. App. 2009) ("Tortious interference with a prospective business advantage or relationship explicitly requires 'but for' causation."), *rev'd on other grounds*, 293 P.3d 752 (Kan. 2013). Dr. Klaassen cannot meet this standard.

Dr. Klaassen alleges that Dr. Hagenbuch was merely acting at the direction of Dr. Terranova. Doc. 296 ¶ 59. Accordingly, the action would have been taken regardless of Dr. Hagenbuch's involvement.

### 4. Dr. Klaassen cannot establish intentional misconduct or malicious conduct by Dr. Hagenbuch.

"To establish the fourth element, a plaintiff must show that the alleged interference was both intentional and improper." *Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F. Supp. 2d 1269, 1277 (D. Kan. 1998); *see also Reazin v. Blue Cross & Blue Shield of Kan.*, 899 F.2d 951, 977 (10th Cir. 1990). The "intentional misconduct" must be an "'interference' which either induces or causes a third person not to enter into or continue a business relationship or which prevents plaintiff from acquiring or continuing a business relationship." *Braun v. Promise Reg'l Med. Cntr.-Hutchinson, Inc.*, No. 11-2180, 2011 WL 6304119, at *8 (D. Kan. Dec. 16, 2011). Even if conduct is sufficient to establish intent, it must also be "of sufficient severity from which a reasonable jury might infer malice," *Rodriguez v. ECRI Shared Servs.*, 984 F. Supp. 1363, 1367 (D. Kan. 1997), as "malice is a predicate for tortious interference," *L&M Enter.*, 231 F.3d at 1288.

Dr. Klaassen's deposition testimony clearly dispels any argument that Dr. Hagenbuch engaged in "intentional misconduct" or acted maliciously. When questioned as to why Dr. Klaassen sued Dr. Hagenbuch, he responded, "Well, he wrote to the NIH and asked for my, my training grant," and "that's the American way." SOF 51. He conceded that Dr. Hagenbuch "probably didn't understand he was becoming a part of the mob by doing what he did." SOF 51. Dr. Klaassen has failed to meet his burden.

**5.    Dr. Klaassen cannot identify any damages resulting from Dr. Hagenbuch's alleged conduct.**

Dr. Klaassen suffered no damages from having been removed as the PI on the Training Grant. He has provided no evidence of any damage associated with the change in PI. "Claims for damages that are conjectural and speculative cannot form a sound basis for an award" in a tortious interference suit. *Byers v. Snyder*, 237 P.3d 1258, 1269 (Kan. Ct. App. 2010) (citations omitted). Not only did Dr. Klaassen's salary remain the same, but his post-removal interactions with the NIH further disprove his claim. Dr. Klaassen testified that he has applied for and received one grant at the University of Washington and intends to continue to apply for more grants. SOF 389. When asked if the NIH "expressed any unwillingness to recognize [him] as a principal investigator," Dr. Klaassen responded, "No." SOF 388. Thus, Dr. Klaassen has alleged no damage to his "relationship" with the NIH, let alone one relating to Dr. Hagenbuch's alleged actions. Any damages are merely conjectural and speculative and do not satisfy the requirements of tortious interference with a prospective business relationship. *Byers*, 237 P.3d at 1269. Further, any theoretical damages allegedly sustained by Dr. Klaassen were the consequences of his own actions and unprofessional conduct, which ultimately led to his termination. They clearly do not arise out of Dr. Hagenbuch's alleged actions.

6. **Dr. Hagenbuch's actions were privileged.**

Dr. Hagenbuch's signature on the letter to the NIH is as an agent of the University and does not employ wrongful means. "[N]ot all interference in present or future contractual relations is tortious. A person may be privileged or justified to interfere with contractual relations in certain situations." *Turner*, 722 P.2d at 1115. Business or employment communications between individuals with a corresponding interest or duty in the subject matter are privileged. *Id*. at 1112–13. Agents of an employer may interfere with the employer's business relations "so long as they are acting on behalf of the corporation and do not employ wrongful means." *Curtright v. Ray*, No. 90-2034, 1991 WL 179385, at *5 (D. Kan. Aug. 23, 1991) (citing *May v. Santa Fe Trail Transp. Co.*, 189 Kan. 419, 424–25, 370 P.2d 390 (1962)); *see also* Restatement (Second) of Torts, § 770 (1979). The question of privilege "is one of law to be determined by the court." *Higgins v. Johnson Cty. Med. Labs., Inc.*, No. 95-2295-JWL, 1996 WL 707102, at *6 (D. Kan. Nov. 15, 1996).

Here, Dr. Hagenbuch was acting in his capacity as an agent of the University when he requested a change in PI and accepted, at the University's request, the PI position on the Training Grant. The University had the right to reassign the PI, and Dr. Hagenbuch merely complied with his employer's requests. Dr. Hagenbuch did not engage in any improper conduct, and his actions are privileged.

**C.    This Court should decline to exercise jurisdiction over Dr. Klaassen's claims against Dr. Hagenbuch.**

Dr. Hagenbuch requests, alternatively, that if the Court declines to enter judgment in his favor on the merits, that the Court decline to exercise supplemental jurisdiction over the tortious interference claim pending against him. Under 28 U.S.C. § 1367(c)(3), the Court may refrain from exercising jurisdiction over state-law claims, should it dismiss Plaintiff's federal claims.

*See Coleman v. Gen. Motors LLC*, No. 12-2305-CM, 2014 WL 3955327, at *2 (D. Kan. Aug. 13, 2014) ("The law is crystal clear that when all federal claims in a case have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims.") (citing *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir.1998)). The Court may also decline to exercise jurisdiction over state law claims under exceptional circumstances when there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(4).

The only claim asserted against Dr. Hagenbuch is the state law tortious interference claim. Dr. Klaassen does not assert any claims against Dr. Hagenbuch for which this Court has original jurisdiction, and diversity jurisdiction is not present. Courts have discretion over whether to exercise supplemental jurisdiction and "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Exercising supplemental jurisdiction over the claim against Dr. Hagenbuch here does not serve the interests for which supplemental jurisdiction exists. Dr. Klaassen could have brought his claims against Dr. Hagenbuch in his state court case, but he elected to split his claims. Further, as the claim against Dr. Hagenbuch is extraordinarily peripheral to this litigation, pursuing this claim here will only confuse the jury, as it has nothing to do with his constitutional claims, and Dr. Hagenbuch was not involved in the events giving rise to the other pending claims. Accordingly, the Court should decline to exercise jurisdiction over Dr. Klaassen's state law claim against Dr. Hagenbuch.

III.   **CONCLUSION**

Dr. Klaassen cannot establish any of the elements of tortious interference on his claims against Dr. Hagenbuch. Accordingly, summary judgment is appropriate in favor of Dr. Hagenbuch on the claim against him.

11

Respectfully submitted,

By: /s/ *Anthony F. Rupp*
Anthony F. Rupp, KS #11590
Tara S. Eberline, KS #22576
FOULSTON SIEFKIN LLP
32 Corporate Woods, Suite 600
Overland Park, KS 66210
(913) 498-2100
(913) 498-2101 (fax)
trupp@foulston.com
teberline@foulston.com


ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 23rd day of January, 2018, I electronically filed the above and foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to the following:

    Alan L. Rupe #08914
    Jeremy K. Schrag #24164
    LEWIS BRISBOIS BISGAARD & SMITH LLP
    1605 N. Waterfront Parkway, Suite 150
    Wichita, KS 67206
    Telephone: (316) 609-7900
    Facsimile: (316) 630-8021
    Email: alan.rupe@lewisbrisbois.com
    Email: jeremy.schrag@lewisbrisbois

    ATTORNEYS FOR PLAINTIFF

                    /s/ *Anthony F. Rupp*
                    ATTORNEY FOR DEFENDANTS

13